LA SUCESIÓN DE JOSÉ INÉS GONZÁLEZ, ETC., demandante y apelante, *v.* THE FEDERAL LAND BANK OF BALTIMORE, demandado y apelado.

Núm. 6261.—*Sometido:* Marzo 6, 1936. *Resuelto:* Mayo 3, 1937.

470

*Armando A. Miranda,* abogado de la apelante; *Frank Martínez, M. Cruz Horta* y *S. García Díaz,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

La viuda e hijos de José Inés González entablaron demanda contra The Federal Land Bank of Baltimore en solicitud de que una escritura de hipoteca otorgada en 3 de septiembre de 1926, y el subsiguiente procedimiento para su ejecución fuesen declarados absolutamente nulos y sin efecto legal alguno. Los demandantes solicitaron se les devolviera la finca y la suma de $100,000 por concepto de daños y perjuicios.

La demanda alega tres causas de acción, a saber:

1.—Que la escritura de hipoteca que sirvió de base al procedimiento ejecutivo es absolutamente nula e ineficaz, toda vez que no fué redactada de acuerdo con los requisitos de la Ley Notarial de Puerto Rico. La infracción específica consistía en estar impresa y en haber sido escrita en papel de más de 24 líneas por página.

2.—(a) Que la sucesión de José Inés González, consistente en su esposa supérstite, Cleofe Roldán, y sus legítimos hijos Dolores, José, Carmen, Leonor, Francisco, Pedro, Jorge, Herminia, Victoria, y María Luisa González, nunca fué hecha parte en el procedimiento ejecutivo.

(*b*) Que aun asumiendo que se le hiciera parte, el requerimiento de pago librado por la corte en dicho procedimiento no estaba dirigido a los hijos de José Inés González.

(*c*) Que en la petición inicial no se alegaban las sumas cobradas por concepto de intereses o principal, conforme exige el artículo 169 del Reglamento para la ejecución de la Ley Hipotecaria.

(*d*) Que los hechos y razones legales que sostenían la certeza, subsistencia y exigibilidad de la reclamación y la jurisdicción de la corte no fueron enumerados en la petición inicial.

(*e*) Que debido a las anteriores deficiencias el procedimiento ejecutivo era nulo e ineficaz.

(*f*) Que el requerimiento de pago no fué debidamente notificado.

3.—Que los demandantes fueron ilegalmente desposeídos de su propiedad y han sufrido daños y perjuicios que estiman en la suma de $100,000.

La contestación contenía las siguientes alegaciones:

En cuanto a la primera causa de acción admitía los hechos alegados, pero sostenía que los supuestos defectos no hacían que la escritura de hipoteca fuera nula e írrita.

En lo relativo a las causas de acción segunda y tercera contenía una negación específica de cada párrafo de la misma y alegaba afirmativamente que lo contrario era lo cierto.

Las defensas especiales eran: (*a*) la legalidad absoluta del procedimiento ejecutivo y (*b*) impedimento (*estoppel*) por parte de los demandantes para atacar la validez de la escritura de hipoteca.

La evidencia aducida en el juicio consistió principalmente en los autos del procedimiento ejecutivo. La viuda e hijos limitaron su testimonio a manifestar los sufrimientos a que habían sido sometidos por virtud del procedimiento ejecutivo y por haber sido posteriormente desposeídos de su propiedad. La corte inferior declaró sin lugar la demanda.

Tres de los cinco errores señalados por los apelantes se refieren a la desestimación por la corte sentenciadora, respectivamente, de cada una de las tres causas de acción presentadas por los demandantes. Los otros dos errores no han

sido argumentados en el alegato de los apelantes, de suerte que los consideraremos como abandonados.

 El demandado admitió que la escritura de hipoteca estaba impresa y redactada en papel cuyas hojas contenían más de 24 líneas por página. Las secciones 12 y 17 de nuestra Ley Notarial de marzo 8, 1906 (Leyes de 1906, pág. 141), tal como leían a la fecha en que se otorgó la escritura, proveían:

"Sección 12.—Las escrituras originales deberán escribirse en pliegos enteros, y por la parte en que hayan de encuadernarse, tendrán un margen en blanco de 20 milímetros, a más de otro de 60 milímetros en cada llana a la izquierda de la escritura que rubricará el notario, y a la derecha un canto o margen de 3 milímetros; *Disponiéndose,* que los notarios no podrán empezar ninguna escritura matriz sino en pliego distinto, y la primera llana de cada pliego tendrá 20 líneas y las demás 24.

"Sección 17.—(Tal como fué enmendada por la Ley núm. 15, aprobada el 12 de marzo de 1914.) Las escrituras públicas se redactarán en lengua castellana, pero podrán hacerse en inglés, siempre que el notario y las partes y testigos conozcan ese idioma. No podrán hacerse en ellas abreviaturas ni dejarse blancos, y podrán hacerse los originales manuscritos o en maquinilla, pero en este último caso deberán usarse cintas de color indeleble, bajo la multa máxima de 500 dollars que impondrá el juez al notario que así no lo hiciese. No podrán usarse guarismos en la expresión de fechas y cantidades, a no ser que al pie de las mismas se consignen en letras, y el notario certificará de haberlas leído a las partes y a los testigos instrumentales, o de haber permitido que las leyesen a su elección antes de que las firmen. No es preciso que el notario exprese que da fe en cada cláusula escrituraria de la estipulación o declaración que contenga, ni de las condiciones o circunstancias legales de las personas o cosas a que se refiera: bastará que consigne una vez, al final del documento, que certifica de todo lo contenido en el mismo, para que tal expresión se entienda aplicada a todas las palabras, estipulaciones, manifestaciones y condiciones reales o personales, contenidas en el instrumento, con arreglo a las leyes."

La corte inferior consideró que los defectos relativos a las líneas e impresión de la escritura eran defectos formales y que no eran suficientes para anular la escritura en sí. Con-

venimos con la corte inferior y con su razonamiento al efecto de que cuando todos los requisitos para la perfección de una obligación hipotecaria han sido cumplidos y los procedimientos completamente francos, no debe ser posible para los herederos o sus causahabientes atacar la validez de la obligación debido a un defecto formal de la escritura.

Cuando se presentó originalmente el documento para que las partes lo firmaran, ellas tuvieron la oportunidad para oponerse a su forma. Debe asumirse que al firmarlo renunciaron cualesquiera desviaciones formales o técnicas del modelo oficial. Según indica la corte, la ley no incluye defectos de este género entre los que vician de nulidad una escritura. Son defectos que no afectan la obligación substantiva creada por el documento. Conforme dice la corte inferior en su opinión—

"A la luz de la jurisprudencia que se deja apuntada y de los principios arriba enunciados, entiende la Corte que la escritura en virtud de la cual se constituyó la hipoteca que se ejecutó por el procedimiento Núm. 9811 de esta Corte, contiene todos los requisitos esenciales para la validez del contrato objeto de la misma, máxime si se tiene en cuenta que el contrato quedó perfeccionado, toda vez que aparece de la misma que el deudor hipotecario tenía la libre disposición de los bienes hipotecados—Artículo 1758 del Código Civil; que el objeto del contrato fué un bien inmueble—Artículo 1775 del Código Civil—y que la hipoteca se constituyó por escritura pública que fué inscrita en el Registro de la Propiedad—Artículo 1776 del Código Civil.''

Además, estamos inclinados a convenir con el apelado en que la viuda e hijos de José Inés González están impedidos, luego de recibir y disfrutar sus beneficios, de atacar por este motivo la validez de la escritura.

■■ El segundo error alega el haberse dejado de hacer parte demandada a la sucesión; la falta de notificar debidamente a los hijos del deudor finado y el dejar la petición inicial de expresar las sumas cobradas por concepto de intereses o principal o de exponer las razones legales relativas a la certeza, subsistencia y exigibilidad de la reclamación o

la jurisdicción de la corte. De un examen detenido de los autos en el procedimiento ejecutivo hallamos:

(*a*) Que aunque el caso se titulaba nominalmente "The Federal Land Bank of Baltimore v. Cleofe Roldán y la Sucesión de José Inés González, se desprendía claramente de las alegaciones de la petición inicial que la Sucesión estaba compuesta de su viuda y de sus hijos legítimos, los que se nombraban específicamente en el párrafo quinto de la misma.

(*b*) Que el requerimiento de pago iba dirigido a la viuda e hijos de José Inés González, y que se notificó personalmente con copia a cada uno de los hijos y a la viuda. Que además el márshal verbalmente les requirió de pago.

(*c*) Que la petición inicial aduce en el primer párrafo que la deuda hipotecaria debía pagarse en veinte plazos anuales con intereses al 6 por ciento, es decir, 19 plazos de $191.84 cada uno y un último plazo de $190.64; y que en el cuarto párrafo se alega que los primeros dos plazos fueron pagados, pero que hubo un incumplimiento de los plazos tercero y cuarto.

(*d*) Que los hechos y razones legales que sostenían la certeza, subsistencia y exigibilidad de la reclamación y la jurisdicción de la corte fueron alegados suficientemente en el escrito inicial.

De las anteriores consideraciones es razonablemente aparente que la viuda e hijos legítimos del deudor José Inés González fueron hechos partes y substancialmente notificados con copia del requerimiento de pago y que el márshal les requirió personalmente para que pagaran la deuda hipotecaria. Llegamos a la conclusión de que fueron debidamente llevados ante la corte.

El contenido del primer párrafo de la petición inicial en que se hacen constar las cuantías numéricas de los plazos, unido a la alegación del cuarto párrafo al efecto de que los dos primeros *fueron pagados,* basta para concluir que el precepto del artículo 169, relativo a la necesidad de expresar categóricamente las sumas cobradas por concepto de inte-

reses o principal, fué cumplido substancialmente. En adición a esto podríamos agregar que las tablas de amortización que aparecen al dorso del pagaré hipotecario, en que figuraban los pagos efectuados y las fechas en que se hicieron los mismos, formaban prácticamente parte de la petición inicial, toda vez que el pagaré fué unido a ésta. Convenimos con el banco apelado en que este precepto fué puesto en la Ley Hipotecaria para asegurar a las cortes de que no se le cobra al deudor más de lo que realmente debe. No existe contención alguna al efecto de que la cantidad cobrada sea incorrecta. De cuanto estuvo ante la corte ésta podía determinar exactamente lo que se había pagado.

Los apelantes no arguyen cómo los hechos y razones legales para sostener la reclamación y jurisdicción de la corte son deficientes. Repetimos, que luego de examinar los autos del procedimiento ejecutivo, hallamos que la petición inicial contenía todas las alegaciones necesarias de hecho y de derecho para sostenerla.

Esto resuelve el caso toda vez que el tercer señalamiento de error procede en la asunción de que el procedimiento ejecutivo era nulo e ineficaz.

*La sentencia apelada debe ser confirmada.*

Los Jueces Asociados Señores Córdova Dávila y Travieso no intervinieron.