JUNTA DE RELACIONES DEL TRABAJO, peticionaria, *v.* SIMMONS INTERNATIONAL, LTD., demandada.

Número 38.
*Sometido:* 11 de mayo de 1955. *Resuelto:* 7 de junio de 1955.

*Hon. Secretario de Justicia José Trías Monge, Aurelio Torres
Braschi, Procurador Auxiliar, Ramón Acevedo Oliveras* y
*Eduardo Álvarez de la Vega,* abogados de la Junta; *Luis E.
Dubón, R. García Cintrón, Luis Ríos Algarín* y *Jaime Pieras,
Jr.,* abogados de la demandada.

PER CURIAM: Acogiéndose a lo dispuesto por el art.
9 (2) (*a*) de la Ley núm. 130 de 8 de mayo de 1945 (pág. 407),
según fué enmendado por la Ley núm. 6 de 7 de marzo de 1946
(págs. 19, 39), la Junta de Relaciones del Trabajo de Puerto
Rico(¹) acudió ante nos con una petición para que pongamos
en vigor la orden por ella dictada con fecha 27 de febrero de
1953. Esa orden se dictó como resultado del cargo formulá-
dole a la Simmons International, Ltd., por la Local núm. 423
de la Upholterer's International Union of North America,
A.F.L., imputando a la querellada que por mediación de sus
agentes, oficiales y demás personal de supervisión en o para
fines de octubre de 1950 y en adelante violó y continúa vio-
lando los términos del convenio colectivo firmado con dicha
Local, al no cumplir con la cláusula relativa a las vacaciones
de sus empleados. Dictada por nosotros una resolución requi-
riendo a la querellada para que dentro del término de diez días
mostrara causas por las cuales no debía dictarse el decreto
solicitado, aquélla (la querellada) se personó en autos y sus-
cita las cuestiones de derecho que pasamos a discutir en
seguida:

I

Sostiene la querellada que este Tribunal carece de
jurisdicción para poner en vigor la orden dictada por la peti-
cionaria debido a que ella está cubierta por la Ley Nacional
de Relaciones del Trabajo,(²) según fué enmendada por la

---

(¹) En adelante nos referiremos a la Junta de Relaciones del Trabajo
de Puerto Rico indistintamente como "la peticionaria" o la "Junta Insular."

(²) En lo sucesivo nos referiremos a la Ley Nacional de Relaciones del
Trabajo simplemente como la "Ley Nacional."

Ley de Relaciones Obrero Patronales (Ley Taft-Hartley), 29 U.S.C.A. secs. 151 y siguientes, y que esa ley confiere jurisdicción exclusiva a la Junta Nacional de Relaciones del Trabajo para conocer de casos de prácticas ilícitas. No estamos de acuerdo. Es indudable que la querellada está cubierta por la referida ley federal. Así lo admite la querellante. Pero dicha ley tan sólo confiere jurisdicción exclusiva a la Junta Nacional en los casos de las prácticas ilícitas en ella enumeradas. Véanse las secs. 8(a) y 8(b) de la referida ley. En el presente caso se imputa a la querellada la violación de un convenio colectivo, cosa que constituye una práctica ilícita de trabajo bajo el art. 8(1)(f) de la Ley 130 de 1945, supra.(3) Dicha práctica ilícita no está cubierta por la Ley Nacional. Por tanto, no existe conflicto alguno entre esta última y la Ley local. Ya este Tribunal ha resuelto específicamente que la Junta Insular puede asumir jurisdicción en casos de prácticas ilícitas por violación de un convenio colectivo, aun cuando la industria envuelta esté cubierta por la Ley Nacional. *Junta Rel. del Trabajo* v. *I.L.A.*, 73 D.P.R. 616; *Junta Rel. del Trabajo* v. *Quiñones* (*per curiam*), resuelto el 12 de noviembre de 1954;* cf. *Junta Rel. del Trabajo* v. *N. Y. & P. R. S/S Co.*, 69 D.P.R. 782. El hecho de que la Ley de Relaciones Obrero Patronales de 1947 (Ley Taft-Hartley) confiera jurisdicción en su sec. 301(a) (29 U.S.C.A. sec. 185(a)) a los tribunales federales para entender en casos en que estén envueltas violaciones de convenios colectivos, no impide la aplicación de reglamentación local sobre esta materia a industrias cubiertas por dicha ley. *Junta Rel. del Trabajo* v. *I.L.A.*, supra.

---

(3) El art. 8(1)(f) de la Ley 130 de 1945, según fué enmendado por la Ley núm. 6 de 7 de marzo de 1946 dispone en lo esencial lo siguiente:

"Será práctica ilícita de trabajo el que un patrono, actuando individualmente o concertadamente con otro:

". . . . . . . .

"(f) Viole los términos de un convenio colectivo ..."

* No publicado.

## II

■■ Tampoco tiene razón la querellada en su contención de que la peticionaria no tenía jurisdicción para intervenir en el caso de autos, toda vez que la querella presentada ante ésta se basaba en una disputa sobre las disposiciones del convenio colectivo y toda vez que para resolver tales disputas en el convenio se fijaba un "procedimiento de arbitraje" que no fué utilizado aquí. La Simmons International, Ltd., aquí querellada, compareció a la vista ante el oficial examinador y en ningún momento alegó el derecho que de acuerdo con el convenio colectivo pudiera tener a que la cuestión se dilucidara mediante procedimiento de arbitraje. En vista de ello, creemos que la querellada renunció a cualquier derecho que le asistiera en ese sentido. Siendo ello así, ella no podía alegar tal derecho en el procedimiento de revisión ante la Junta Insular y tampoco puede suscitarlo ahora ante este Tribunal. Undergraft & McCoy, *Arbitration of Labor Disputes*, sec. 8, pág. 71; *Coal & Oil Co.*, 30 L.R.R.M. 1407.

## III

■■ También sostiene la querellada no haber cometido la práctica ilícita que se le imputa, ya que, según ella, el convenio colectivo que supuestamente violó es nulo por ser contrario a la política pública del gobierno federal, conforme esa política quedó expresada en la Ley Nacional. Al hacer semejante contención, la querellada se basa en que el convenio colectivo en cuestión contenía una cláusula de taller unionado que resulta ser ilegal según la sec. 8 (*a*) (3) de la Ley Nacional, ya que no se llevaron a cabo las elecciones requeridas por la sec. 9 (*e*) (1) de la misma ley. Dichas secciones, según rezaban antes de ser enmendadas en el año 1951,[4] leían así:

"8a.—Será práctica ilícita de trabajo el que un patrono:

". . . . . . . .

"3.—Mediante discriminación en el empleo o tenencia de em-

---

[4] Ley núm. 189 de 22 de octubre de 1951, Congreso 82do., primera sesión.

pleo o de cualquier término o condición de empleo estimule o desaliente la matrícula en cualquier organización obrera: *Disponiéndose,* que nada de lo dispuesto en esta Ley, o en cualquier otro estatuto de los Estados Unidos impedirá que un patrono celebre un convenio con una organización obrera (que no haya sido establecida, mantenida o ayudada por cualquier acto definido como una práctica ilícita en la sec. 8(*a*) de esta ley) que exija como condición de empleo la afiliación a ella en o después del trigésimo día siguiente al comienzo de tal empleo o de la fecha en que empiece el acuerdo, cualquiera que sea posterior, (i) si tal organización obrera, de acuerdo con la sec. 9(*a*), es la representante de los empleados en la unidad apropiada de negociación colectiva cubierta por el convenio al momento de ser éste concertado; y (ii) *si, luego de celebrarse la elección más reciente bajo la sec. 9(e), la Junta ha certificado que por lo menos la mayoría de los empleados con derecho a votar en dicha elección han votado para autorizar a dicha organización obrera a celebrar dicho convenio: Disponiéndose, además,* que ningún patrono justificará discriminación alguna contra un empleado por razón de no pertenecer éste a una organización obrera (A) ... (B) ...." (Bastardillas nuestras.)

"9(*e*)(1).—Al radicarse en la Junta una petición por una organización obrera, que sea la representante de los empleados de acuerdo con la sec. 9(*a*), en que se alegue que el 30% o más de los empleados dentro de la unidad que se reclame como la apropiada para dichos fines desean autorizar a dicha organización obrera para concertar un convenio con el patrono de dichos empleados que requiera la afiliación a dicha organización obrera como condición de empleo en tal unidad, y una vez haya quedado ello suficientemente demostrado, la Junta llevará a cabo, si no existe una cuestión de representación, una votación secreta entre dichos empleados y certificará los resultados de esa votación a la organización obrera y al patrono."

Las cláusulas de taller unionado quedan en principio prohibidas por la sec. 8(*a*)(3) de la Ley Nacional y sólo se permiten por vía de excepción cuando se cumplen los requisitos exigidos por esa sección. Antes del 22 de octubre de 1951 (fecha en que entró en vigor la enmienda a las secs. 8(*a*)(3) y 9(*e*)(1) de la Ley Nacional), al igual que al tiempo de fir-

marse el convenio colectivo en el caso de autos, (⁵) las elecciones a que ya nos hemos referido eran requisito indispensable para la validez de las cláusulas de taller unionado. 173 A.L.R. 1401, 1415 (sec. 21) ; 2 Labor Law Reporter, cuarta ed., sec. 4530, pág. 4743.

No hay duda de que en este caso no se cumplió con el requisito de la celebración de elecciones. Así lo admite la peticionaria. Sin embargo, la querellada no tiene razón al sostener que por este hecho queda relevada de toda responsabilidad, no obstante haber violado otras disposiciones válidas del convenio colectivo. En diversos casos la Junta Nacional ha ordenado que se dejen de cumplir en su totalidad convenios colectivos que contienen cláusulas ilegales. Véanse *Pacific Telephone and Telegraph Co.*, 76 N.L.R.B. 889; *Salant & Salant, Inc.*, 88 N.L.R.B. 816; *Julius Resnick, Inc.*, 86 N.L.R.B. 38; *Julian Freirich Co.*, 86 N.L.R.B. 542; 2 Labor Law Reporter, cuarta ed., sec. 4535, pág. 4752. Mas todo tiende a indicar que después de aprobarse la enmienda de 1951 a la secs. 8(*a*)(3) y 9(*e*)(1), supra, que eliminó totalmente el requisito de elecciones, la Junta Nacional no anularía la totalidad del convenio colectivo en un caso como el presente. Véanse *Southland Paper Mills, Inc.*, 97 N.L.R.B. 896; *Davis Motor Co., Inc.*, 97 N.L.R.B. 125. Concluímos, por tanto, que nosotros tampoco debemos declarar que el convenio aquí envuelto es nulo en su integridad.

■ Mas aún si estuviésemos equivocados en nuestro anterior aserto, resolvemos que la querellada no tiene razón en la contención aquí discutida, a la luz de lo expresado en el caso de *National Labor Relations Board* v. *Rockaway News, Supply Co.*, 345 U. S. 71, donde se dice lo siguiente a la pág. 76:

"Hay dos obstáculos que impiden que la Junta ignore completamente este contrato. El primero es que, aun cuando el haberse insertado una disposición ilegal sea suficiente para jus-

---

(⁵) El convenio colectivo envuelto en este caso se firmó el 29 de septiembre de 1949 y se le dió efecto retroactivo al primero de enero del mismo año.

tificar a la Junta en dejarlo sin efecto para el futuro, ello no significa que pueda ser completamente pasado por alto al juzgar hechos que ocurrieron antes de dejarse sin efecto. Una cosa es que la Junta diga que las partes no deben continuar bajo tal contrato; y otra es que diga que no puede reconocérsele efecto alguno a un contrato negociado de buena fe por la unión y el patrono, que ambos creían válido y eficaz, que ambos venían observando y que ninguna autoridad había aún declarado nulo."

En vista de lo anterior decidimos que la existencia de la cláusula ilegal no hace nulo *ab initio* el convenio colectivo, sino en todo caso anulable y, no habiendo evidencia en los autos de que haya sido anulado por autoridad competente, resolvemos que la querellada viene obligada a cumplir con las disposiciones válidas en él contenidas, así como que ella no puede aducir la nulidad del convenio como defensa en este procedimiento.

Conviene indicar que no podría surgir conflicto alguno entre la orden dictada por la Junta en 27 de febrero de 1953 —en el sentido de que la querellada cumpla cualquier convenio colectivo "que tenga firmado con la Local núm. 423 de la Upholsterer's International Union of North America, A.F.L."—y alguna orden que pudiere dictar la Junta Nacional anulando en todo o en parte el convenio colectivo envuelto en este caso, debido a que por sus propios términos el convenio aquí envuelto expiró en 1950.

IV

 Señala la querellada, además, que no debe ponerse en vigor la orden de la Junta Insular porque no existen en el expediente hechos suficientes demostrativos de que la Simmons International, Ltd., sea un patrono de acuerdo con el art. 2, inciso 2, de la Ley de Relaciones del Trabajo de Puerto Rico (núm. 130 de 1945, enmendada en 1946), ni de que la Local núm. 423 ya citada sea una organización obrera a tenor de lo dispuesto por el art. 2, inciso 10, de esa ley. Tampoco tiene razón la querellada. En la transcripción de evidencia que ha sido elevada en este caso aparece que el gerente de la

Simmons International, Ltd., declaró que ésta utilizaba un total de 38 trabajadores en una fábrica dedicada a la manufactura de colchones y camas de metal, y que era una corporación debidamente inscrita en la oficina del Secretario Ejecutivo de Puerto Rico. Es innegable que esto es suficiente para establecer que la querellada es un patrono, según esta palabra ha sido definida por el art. 2, inciso 2, de nuestra Ley de Relaciones del Trabajo. En él se dice:

"El término 'patrono' incluirá ejecutivos, supervisores y a cualquier persona que realizare gestiones de carácter ejecutivo en interés de un patrono directa o indirectamente, pero no incluirá, excepto en el caso de las instrumentalidades corporativas del Gobierno de Puerto Rico como más adelante se definen, al gobierno ni a ninguna subdivisión política del mismo; *Disponiéndose,* que incluirá, además, a todo·individuo, sociedad u organización que intervenga a favor de la parte patronal en cualquier disputa obrera o negociación colectiva."

También se establece claramente por la evidencia que ante el oficial examinador desfiló y que la Junta Insular consideró al dictar su orden, que la unión tenía un convenio firmado con la querellada y que aquélla admitía en su matrícula empleados de ésta. En vista de ello, es claro que la referida unión es una organización obrera, según esa frase se define en el art. 2, inciso 10 de la Ley Insular de Relaciones del Trabajo, que dice así:

"El término 'organización obrera' significa una organización de cualquier clase o cualquier agencia o comisión de representación de empleados o cualquier grupo de empleados actuando concertadamente o plan en el cual participen los empleados y que exista con el fin, en todo o en parte, de tratar con un patrono con respecto a quejas y agravios, disputas, salarios, tipos de paga, horas de trabajo y/o condiciones de empleo."

 Insiste también la querellada en que no se debe poner en vigor la orden de la Junta, por no haberse presentado evidencia al efecto de que la Unión había cumplido con todas las disposiciones de la Ley Nacional. Se hace innecesario considerar esta contención, ya que en el alegato presentado

por la querellada no se discute este punto en forma alguna. *De Jesús* v. *Assad,* 63 D.P.R. 137, 140; *Sucn. González* v. *Federal Land Bank,* 51 D.P.R. 469, 471.

' V

■ El convenio colectivo existente entre la Simmons International, Ltd. y la Local núm. 423 disponía en su art. XIV, sec. 1, lo siguiente:

"Este contrato regirá a partir del primero de enero de 1949 y continuará en vigor hasta el 31 de diciembre de 1949; disponiéndose que a partir del primero de octubre de 1949 en adelante las cláusulas relativas al tipo de salario por hora, a las vacaciones y a ausencia por enfermedad, se ajustarán a las disposiciones del Decreto Mandatorio núm. 16 de la Junta de Salario Mínimo del Departamento de Trabajo."

En vista de ello, la Junta Insular determinó que los empleados de la querellada tenían derecho durante el año 1950 a las vacaciones y a la licencia por enfermedad dispuestas por el Decreto Mandatorio núm. 16 de la Junta de Salario Mínimo.[6]

La querellada alega que la Junta Insular cometió error al así concluir. Se basa para ello en la contención de que el decreto citado no cubría la industria a la cual ella se dedica y en que, independientemente de ello, no fué la intención de las partes que ese decreto fuera aplicable a la querellada.

_____

[6] El Decreto Mandatorio núm. 16, fijando salario mínimo, períodos máximos de labor y demás condiciones de trabajo para los empleados del comercio al por mayor, dispone en su art. V, incisos *(B)* y *(C)*, en lo pertinente lo que pasamos a copiar en seguida:

"B—*Vacaciones*—Todo empleado tendrá derecho a vacaciones, con sueldo completo que se hará efectivo al comenzar a disfrutarlas a razón de un día y cuarto (1¼) por cada mes en que haya tenido por lo menos ciento veinte (120) horas de labor. Las vacaciones se concederán anualmente en forma que no interrumpan el normal funcionamiento del negocio, a cuyo fin el patrono establecerá los turnos correspondientes. . . .

"C—*Licencia por Enfermedad*—Todo empleado tendrá derecho a licencia por enfermedad con sueldo completo a razón de un día y cuarto (1¼) por cada mes en que haya tenido por lo menos ciento veinte (120) horas de labor. La licencia por enfermedad será acumulable durante el curso del año pero no de un año para otro."

No estamos de acuerdo. Admitiendo a los fines de la discusión que el decreto no cubriese la industria de la querellada, a virtud del propio convenio colectivo suscrito por las partes las disposiciones del decreto en cuanto al tipo de paga por hora, vacaciones y licencia por enfermedad eran aplicables a los empleados cubiertos por el mismo a partir del primero de octubre de 1949. A este respecto los términos del convenio resultan paladinos. Debe presumirse que la intención de las partes fué asegurarse de que las referidas disposiciones del Decreto núm. 16 fuesen aplicables a ellas, independientemente de los términos del propio decreto. El resolver lo contrario equivaldría a concluir que la intención de las partes fué incluir en el convenio colectivo una disposición enteramente fútil, puesto que de estar cubierta la industria de la querellada por el decreto referido sus disposiciones serían aplicables a ésta independientemente del convenio en sí.

## VI

Arguye asimismo la querellada que no procede la solicitud de que se ponga en vigor la orden de la peticionaria por haber ésta errado al darle crédito a la prueba de los trabajadores y a los certificados médicos por éstos presentados. Tal contención es claramente frívola. La determinación de la credibilidad merecida por los testigos de una y otra parte, es función exclusiva de la Junta Insular. Por disposición expresa de la ley que rige la materia este Tribunal no puede intervenir con las conclusiones de hechos formuladas por la Junta Insular, excepto cuando las mismas no están sostenidas por la evidencia. Véanse art. 9(2) (a) y (b) de la Ley de Relaciones del Trabajo de Puerto Rico—núm. 130 de 1945, según fué enmendada en marzo 7 de 1946 (págs. 19, 41)—así como *Rivera* v. *Junta Rel. Trabajo*, 70 D.P.R. 5, 8; *Rivera* v. *Junta Rel. Trabajo*, 70 D.P.R. 342, 350.

## VII

Tampoco tiene razón la querellada al sostener que la acción en el presente caso está prescrita, por haber expirado

el término de seis meses dentro del cual deben radicarse las querellas por prácticas ilícitas de trabajo de acuerdo con la Ley Nacional. Dicho término prescriptivo es claramente inaplicable en el caso de autos, ya que el procedimiento en este caso no se siguió en armonía con la referida ley y sí de conformidad con la Ley de Relaciones del Trabajo de Puerto Rico, que no contiene disposición alguna en cuanto a término prescriptivo para la radicación de cargos.

## VIII

■ Señala igualmente la Simmons International, Ltd., que la Junta Insular erró al "excluir el testimonio oral del Lic. Hernán Pesquera el cual demostraría la verdadera intención de las partes al mencionar en el convenio colectivo el Decreto Mandatorio núm. 16." Toda vez que en su alegato la querellada se limita a señalar esta cuestión, sin discutirla en forma alguna, la misma no debe ser considerada por nosotros. Véanse *De Jesús* v. *Assad*, supra y *Sucn. González* v. *Federal Land Bank*, supra.

## IX

■ El convenio colectivo disponía en su art. VI, sec. 2, que los empleados de la querellada recibirían paga por ciertos días de fiesta,[7] a pesar de que no tendrían que trabajar durante esos días. Insiste la querellada en que dichos días deben ser computados como parte de las vacaciones con paga a que tenían derecho los empleados de acuerdo con el Decreto

---

[7] "Art. VI, Sec. 2.—*Días Festivos con Paga*—No se llevará a cabo ningún trabajo en los siguientes días festivos y a todas aquellas personas que sean empleadas de la Compañía en dichos días, se les pagarán ocho horas al salario corriente, basado en el promedio del sueldo ganado en esa semana específica:

 Día de Año Nuevo
 4 de Julio
 Día del Trabajo
 Día de la Raza
 Día de Acción de Gracias
 Día de Navidad

Las horas así concedidas serán computadas como de trabajo a los fines de determinar la paga por horas de trabajo en exceso."

Mandatorio núm. 16. No le asiste la razón. No vemos cómo puede decirse que la querellada le concedió esos días "de vacaciones" a sus empleados, cuando éstos tienen derecho a ellos "por ministerio de ley." [8] Indudablemente, el propósito de las disposiciones sobre vacaciones incluídas en el Decreto Mandatorio núm. 16, las que, como dijimos anteriormente, son aplicables a este caso por disposición expresa del convenio colectivo, fué conceder a los empleados ciertos días de asueto en adición a los designados por ley como días de fiesta. El interpretar dichas disposiciones en la forma sugerida por la querellada claramente equivaldría a burlar lo acordado a este respecto en el convenio colectivo.

Finalmente sostiene la querellada que la Junta Insular cometió error al concluir que la semana de vacaciones concedida por ella a los trabajadores solamente equivalía a cinco días laborables. Dicha conclusión está respaldada por la prueba, ya que de la declaración del gerente de la querellada aparece que a sus obreros solamente se les permitió disfrutar de cinco días de vacaciones con paga. Siendo ésa una conclusión de hechos este Tribunal no tiene facultad para alterarla. Ley 130, supra, art. 9 (2) (a) y (b).

*Se declara con lugar la petición de la Junta Insular y en su virtud se dictará sentencia poniendo en vigor la orden por ella dictada en 27 de febrero de 1953.*

[8] En Puerto Rico tenemos varias leyes que fijan como festivos los días que en ellas taxativamente se especifican.