JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* PAUL L. MCCONNIE, h/n/c COLONIA HACIENDA GRANDE y COLONIA VIRGINIA, demandado.

*Número:* JRT-66-4     *Resuelto:* 11 de mayo de 1967

*J. B. Fernández Badillo, Procurador General, Luis M. Rivera Pérez, Celia Canales de González y Marta Ramírez de Vera,* abogados de la peticionaria; *Julián O. McConnie, Jr.,* abogado del demandado.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Recurre ante nos la Junta de Relaciones del Trabajo de Puerto Rico (designada en lo sucesivo como la Junta) en solicitud de que pongamos en vigor su decisión y orden de 18 de marzo de 1965 dirigida al demandado, Paul L. McConnie, h/n/c Colonia Hacienda Grande y Colonia Virginia (en lo sucesivo designado McConnie) para que cumpla con las recomendaciones del oficial examinador de aquélla, o sea, que pague a todos los trabajadores empleados en sus fincas Colonia Virginia y Hacienda Grande las sumas de dinero que les adeuda por razón del aumento en el precio del azúcar y las disposiciones contenidas en el convenio colectivo y notifique al Presidente de la Junta las providencias tomadas para cumplir con lo aquí ordenado. Como McConnie cesó como patrono no se recomendó la fijación de avisos como en otros casos.

Expedimos en 29 de septiembre de 1966 una resolución requiriendo de McConnie que mostrase causas por las cuales no debe dictarse un decreto poniendo en vigor la referida decisión y orden de la Junta.

De acuerdo con las conclusiones de hecho del oficial examinador, no controvertidas por el demandado, McConnie se dedicaba a la siembra, cultivo, corte y recolección de caña de azúcar en las Colonias Hacienda Grande y Virginia. Había suscrito con la Unión "Obreros Unidos de Loíza" un convenio colectivo en relación con los empleados agrícolas de dichas fincas que disponía un aumento de jornal de seis centavos y

medio por día por cada 10 centavos o fracción de aumento en el precio de azúcar sobre el precio básico de $4.50 C.I.F. New-foundland. Además, proveía para un comité de quejas y agravios compuesto de dos representantes designados por la Unión y dos por el patrono, con jurisdicción para entender en todas las controversias que surgieren entre el patrono y la unión, inclusive aquéllas basadas en la interpretación del contrato; en caso que no pudiere resolver dentro de un plazo de 48 horas, el convenio disponía que se sometiera la controversia a un quinto miembro el cual, de no poderse designar por los cuatro miembros originales del comité, lo designaría un alto funcionario del gobierno estatal, a petición del comité, de entre los magistrados que componen el Tribunal Superior de Puerto Rico.

Al ocurrir un aumento en el precio del azúcar, y no obstante los requerimientos de la unión, McConnie no pagó a sus empleados los aumentos de jornal correspondientes, alegando que estaba pagando el mismo jornal que los demás agricultores de la zona. Al final de la zafra McConnie se retiró del negocio. El comité en cuestión acordó continuar con los trámites provistos en el convenio. Como la controversia no pudo resolverse por los cuatro miembros permanentes del comité de quejas y agravios, se realizaron las gestiones necesarias para obtener la designación del quinto miembro pero no se pudo lograr dicha designación no obstante todas las gestiones realizadas por la unión a ese efecto.

En vista de lo anterior, la División Legal de la Junta radicó querella ante ésta imputando a McConnie haber incurrido en la práctica ilícita de violar la cláusula de aumento de jornal del convenio colectivo.

Resolvió el oficial examinador que:

"La norma consistentemente seguida por la Junta de requerir a las partes que agoten todos los remedios provistos en el convenio colectivo para zanjar sus diferencias antes de recurrir a la

Junta es para ser aplicada en situaciones que no sean extraordinarias. Sin embargo, negar acceso a los procedimientos de la Junta a una organización obrera por razón de la imposibilidad para designar el quinto miembro del Comité de Quejas y Agravios, no ayudaría a fomentar la política pública contenida en la Ley. En consecuencia, la Junta debe entender en esta disputa a pesar de que, técnicamente, los procedimientos establecidos en el Comité de Quejas y Agravios no se utilizaron hasta su culminación."

### Apuntamientos del Demandado

En contestación apunta McConnie que la referida decisión y orden es abusiva y discriminatoria, ilegal, errónea y nula; que no es equitativa, justa e imparcial; que es inconstitucional.

No le asiste la razón al demandado y, por el contrario, procede que pongamos en vigor la decisión y orden en cuestión.

En síntesis, dos son en realidad las razones que aduce el demandado en apoyo de sus apuntamientos. Una es que la actuación de la Junta de hacer que McConnie cumpla con la cláusula de aumento de jornal del convenio es improcedente porque no tan sólo no actuó en igual forma en contra de los demás colonos, sino que se negó a hacerlo a pesar de solicitarlo el demandado oportunamente por escrito. La otra es que el oficial examinador no cita jurisprudencia ni otros argumentos legales en apoyo de su conclusión de que la Junta debe entender en la disputa ya que no fue posible lograr la designación del quinto miembro.

De acuerdo con el inciso (a) del Art. 7 de la Ley de Relaciones del Trabajo de Puerto Rico (29 L.P.R.A. sec. 68(a)), la Junta tiene facultad, según se dispone en esta ley, para evitar que cualquier persona se dedique a prácticas ilícitas del trabajo siendo una de éstas la violación de un convenio colectivo. Art. 8(1)(f) de dicha ley—29 L.P.R.A. sec.

69 (1) (f). Pero la Junta actúa con respecto a tales actuaciones "Siempre que se radique el cargo de que cualquier persona, patrono u organización obrera se ha dedicado o se dedica a cualquier práctica ilícita de trabajo". Art. 9 (1) (a) de la ley en cuestión—29 L.P.R.A. sec. 70 (1) (a). La Junta no ha sido investida de facultad para radicar una querella por su propia iniciativa. Sólo puede hacerlo cuando se ha presentado cargo de que una persona se ha dedicado o se dedica a una práctica ilícita del trabajo. La radicación de un cargo es por consiguiente de naturaleza jurisdiccional. *National Labor Relations Board* v. *Swift and Company*, 233 F.2d 226, 231 (8th Cir. 1956); *Consumers Power Co.* v. *National Labor Relations Bd.*, 113 F.2d 38, 42 (6th Cir. 1940).

■ En vista de lo expuesto, la Junta en este caso no podía iniciar, *motu proprio*, procedimiento alguno en contra de los colonos que en violación del convenio colectivo en cuestión dejasen de, o se negasen a, pagar los aumentos de jornales procedentes debido al aumento en el precio del azúcar. Sólo podía proceder cuando se radicasen uno o más cargos al efecto. En esas circunstancias, y en vista de tales limitaciones, no hay base para sostener, como pretende el demandado, que la Junta actuó abusiva, discriminatoria, ilegal, erróneamente y que su actuación en este caso no es equitativa, justa e imparcial y, por el contrario, es nula o inconstitucional.

■ Tampoco procede cuestionar la conclusión del oficial examinador al efecto de que procedía que la Junta actuase a pesar de que, técnicamente, los procedimientos en el comité de quejas y agravios no se utilizaron hasta su culminación.

En *Pérez* v. *Autoridad Fuentes Fluviales*, 87 D.P.R. 118, 125, (1963), dijimos que la Junta se expresó acertadamente al decir que: ". . . esta Junta, cumpliendo con el propósito legislativo, generalmente no entiende en casos de violación de convenio cuando las partes no han agotado los remedios que el

mismo convenio ofrece para la solución de tales problemas." En *Vaca* v. *Sipes*, resuelto por el Tribunal Supremo de Estados Unidos en 27 de febrero de 1967, ese alto cuerpo dijo que: "está establecido que el empleado debe por lo menos tratar de agotar los procedimientos exclusivos de quejas y agravios y arbitraje establecidos por el convenio colectivo. *Republic Steel Corp.* v. *Maddox*, 379 U.S. 650 (1965). Sin embargo, debido a que estos remedios contractuales han sido concebidos y, con frecuencia controlados por la unión y el patrono, pueden muy bien resultar insatisfactorios o impracticables. El problema entonces consiste en determinar bajo qué circunstancias puede el empleado individual obtener una revisión judicial de su reclamación de violación de contrato a pesar de haber dejado de obtener una solución a través de los procedimientos remediales contractuales."

En el caso ante nos la unión realizó todos los esfuerzos razonables que en justicia podía esperarse que ejerciera con el fin de darle efectividad y culminación al procedimiento de quejas y agravios pero no pudo lograr la designación del quinto miembro del comité de quejas y agravios de acuerdo con el procedimiento establecido por el convenio colectivo debido a circunstancias fuera de su dominio, es decir, a la inhabilidad para actuar o la ausencia de actuación del funcionario designado directamente en el convenio así como de otro a quien aquél señaló como el indicado para hacer la designación en cuestión. No podemos decir, por lo tanto, que fuese errónea o improcedente la conclusión del oficial examinador, aprobada por la Junta, de que "negar acceso a los procedimientos de la Junta a una organización obrera por razón de la imposibilidad para designar al quinto miembro del comité de quejas y agravios no ayudaría a fomentar la política pública contenida en la ley." *Abréu Román* v. *Rivera Santos*, 92 D.P.R. 325 (1965); *Wymard* v. *McCloskey & Co.*, 190 F.Supp. 420 (1960), confirmado en 292 F.2d 839 (3d Cir. 1961).

*Por las razones indicadas, procede que accedamos a la solicitud de la Junta de que pongamos en vigor su decisión y orden de 18 de marzo de 1965, y en tal virtud se ordena al demandado que tome la acción afirmativa que le requiere la orden de la Junta.*