JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* ADMINISTRACIÓN DE COMPENSACIONES POR ACCIDENTES DE AUTOMÓVILES, demandada.

*Número:* O-77-450      *Resuelto:* 30 de marzo de 1978

*José Velaz Ortiz,* abogado de la peticionaria; *Laffitte & Domínguez* y *José A. Añeses Peña,* abogados de la demandada.

El Juez Asociado Señor Negrón García emitió la opinión del Tribunal.

La Junta de Relaciones del Trabajo de Puerto Rico nos solicita que pongamos en vigor una orden que dictara el 20 de julio de 1977 contra la demandada Administración de Compensaciones por Accidentes de Automóviles (A.C.A.A.).[1]

Expongamos una síntesis de los hechos relevantes no contradichos. El 26 de marzo de 1973, la señora Sonia Hernández Campos fue contratada por la demandada como Oficinista I para prestar servicios temporales durante un período de tres meses, esto es, hasta el 25 de junio. Al vencimiento de este contrato, continuó desempeñándose en las mismas funciones a base de contratos temporáneos renovados mensualmente hasta octubre, mes en que los empleados de la agencia decretaron un paro huelgario. La huelga terminó el 19 de diciembre de 1973, y como consecuencia de la misma la demandada suscribió en dicha fecha un convenio colectivo con la Unión que agrupaba a los empleados en huelga. El día 26 de ese mes la señora Hernández fue de nuevo temporalmente contratada. Tal contrato le fue renovado mensualmente hasta que en 22 de abril de 1974 advino en conocimiento[2] del memorando del día 18 en que A.C.A.A. le notificaba que su contrato—vencedero el 25 de abril—no le sería extendido. Como miembro de la Unión que representaba a los empleados de la agencia, y estando cubierta por las disposiciones del con-

---

[1] Nuestra jurisdicción para entender en tal petición emana del Art. 9(2)(a) de la Ley de Relaciones del Trabajo de Puerto Rico. (29 L.P.R.A. sec. 70(2)(a).)

[2] Por haber estado hospitalizada desde el día 10 de abril de 1974 al día 22.

venio($^3$) colectivo vigente, notificó lo sucedido a la presidenta de la Unión quien le informó que tan pronto supo de la decisión se comunicó con el Director de Personal de la demandada para discutir su caso—y el de otra empleada en igual situación—y que éste había quedado en realizar gestiones al respecto, las cuales le informaría en futura ocasión. Cabe mencionar que a pesar de que el convenio colectivo vigente desde el mes de diciembre de 1973, contenía un mecanismo especial para la dilucidación de querellas entre las partes, el mismo no fue utilizado durante los primeros meses ya que las disputas se resolvían de manera informal en discusiones que sostenían miembros de la Unión y representantes del patrono.

En reunión celebrada días después, el Director de Personal informó a la Presidenta y a la señora Hernández que estaba tratando de conseguir una plaza temporera; ésta de inmediato manifestó su inconformidad de aceptarla. Con el transcurso de los días, las gestiones del Director de Personal no se concretaron en oferta formal de un puesto de carácter temporal o permanente; sin embargo se le extendieron nombramientos regulares a varios empleados temporales de menor antigüedad en la agencia que la señora Hernández.

Fundándose en los anteriores hechos, el día 12 de diciembre de 1974, aproximadamente ocho meses después, la señora Hernández radicó ante la peticionaria un cargo de práctica ilícita de trabajo imputándole a la demandada haber violado el Art. VI del Convenio Colectivo vigente.($^4$) Luego de la

---

($^3$) La violación de los términos de un convenio colectivo constituye una práctica ilícita de trabajo bajo las disposiciones de la Ley de Relaciones del Trabajo de Puerto Rico. (29 L.P.R.A. sec. 69(1)(f).)

($^4$) Estuvo en vigor desde el 19 de diciembre de 1973 hasta el 19 de diciembre de 1976. En lo pertinente el Art. VI disponía las siguientes cláusulas en las cuales la empleada basó su cargo:

"Sección 5. Empleados temporeros son aquellos que se emplean para realizar labores durante un período que no excederá de noventa (90) días laborables en un puesto determinado. La Administración tiene derecho a ordenar la cesantía de estos empleados dentro del término de su nombra-

investigación de rigor, la peticionaria expidió querella contra la A.C.A.A., haciéndose eco del señalamiento de la querellante al efecto de que la demandada había violado el convenio colectivo y por ende cometió una práctica ilícita de trabajo vedada por nuestra legislación laboral. En la vista, la agencia, como única defensa afirmativa, alegó que debido a que la querellante no había agotado los remedios provistos en el convenio colectivo para la ventilación de querellas, la Junta carecía de jurisdicción para entender en la misma. La Oficial Examinador que presidía acogió tal planteamiento y en su Informe recomendó a la Junta que se declarara sin jurisdicción. La peticionaria no coincidió con tal recomendación, y luego de analizar el caso, emitió una Decisión y Orden declarando con lugar la querella. (⁵) No habiéndose cumplido, la Junta acude ante nos para que le demos virtualidad a su mandato.

---

miento sin que tal acción de lugar a querella alguna ante los organismos establecidos por este Convenio Colectivo para la solución de controversias.

"Sección 8. Los empleados temporeros se mantendrán en una lista de elegibles por antigüedad. Cuando surjan plazas de nueva creación se cubrirán mediante el ascenso de las personas cualificadas. Luego de cubiertas todas las oportunidades de ascensos, la vacante que se cree y que no afecte ascenso alguno será cubierta por los empleados temporeros cualificados por orden de antigüedad.

"Si la Administración decide no llenar alguna vacante que surja dentro de la unidad apropiada deberá notificar las razones para ello a la Unión dentro de los 10 días calendarios siguientes a su decisión. Si la Unión no está de acuerdo con la decisión, someterá el asunto directamente al procedimiento de arbitraje."

(⁵) La orden de la Junta dispone lo siguiente:

"1.—Cesar y desistir de:

"a) En manera alguna violar los términos del convenio colectivo que suscribió con la Unión de Empleados de la Administración de Compensaciones por Accidentes de Automóviles cuya vigencia se extiende desde el 19 de diciembre de 1973 hasta el 19 de diciembre de 1976.

"2.—Tomar la siguiente acción afirmativa que consideramos efectúa los propósitos de la Ley:

"a) Otorgar a la querellante el puesto de Oficinista I o uno sustancialmente igual con carácter permanente.

"b) Compensar a la querellante por la paga dejada de percibir desde la fecha del despido hasta la de su reposición deduciéndole los ingresos

En su comparecencia la demandada opone el mismo fundamento original ante la Junta de que ésta carece de jurisdicción, y en la alternativa aduce, que del expediente no surge evidenca alguna demostrativa de la alegada violación al convenio colectivo.

■ Discutiremos el primer planteamiento. La jurisdicción de la Junta para entender en casos que envuelvan prácticas ilícitas de trabajo es exclusiva, [6] y le ha sido expresamente conferida por el Art. 7(a) de la Ley de Relaciones del Trabajo de Puerto Rico, 29 L.P.R.A. sec. 68(a), que dispone lo siguiente:

"La Junta tendrá facultad, según se dispone más adelante en la presente, para evitar que cualquier persona se dedique a cualesquiera de las prácticas ilícitas de trabajo que se enumeran en el artículo 8. *Esta facultad será exclusiva, y no la afectará ningún otro medio de ajuste o prevención.*" [7] (Bastardillas nuestras.)

---

obtenidos en otros empleos durante dicho período, pero abonándole los intereses legales correspondientes.

"c) Fijar y mantener fijados por un período no menor de treinta (30) días consecutivos en sitios conspícuos de su negocio copia del Aviso a Todos Nuestros Empleados que se une a y se hace formar parte de esta Decisión y Orden.

"d) Notificar al Presidente de la Junta de Relaciones del Trabajo de Puerto Rico dentro de diez (10) días siguientes a la fecha de esta Orden qué providencias ha tomado la querellada para cumplir con lo aquí ordenado."

[6] *J.R.T.* v. *Línea Suprema, Inc.*, 89 D.P.R. 840, 846 (1964); *U.T.I.E.R.* v. *J.R.T.*, 99 D.P.R. 512 (1970); Fernández, Demetrio, *"La Junta de Relaciones del Trabajo de Puerto Rico y el Sector Público"*, 43 Rev. Jur. U.P.R. 295, 407–414.

[7] La Ley Nacional de Relaciones Obrero-Patronales (Ley Taft-Hartley) contiene un precepto análogo en su Art. 10(a). (29 U.S.C.A. sec. 160(a).) Bajo tal disposición la Junta Nacional ha decidido que la existencia de un procedimiento de arbitraje en un convenio colectivo, no la priva de jurisdicción para entender en un caso de práctica ilícita de trabajo, a pesar de que la parte que acuda ante ella no haya utilizado tal procedimiento. *Flasco Mfg. Co.*, 162 N.L.R.B. 611, escolio 13, 64 L.R.R.M. 1077 (1967); *Woodlawn Farm Dairy Co.*, 162 N.L.R.B. 48, 63 L.R.R.M. 1495 (1966); *Great Dane Trailers, Inc.*, 150 N.L.R.B. 438, 439, 58 L.R.R.M. 1097 (1964); *Cloverleaf Division of Adams Dairy Co.*, 147 N.L.R.B. 1410,

Con tal lenguaje el Poder Legislativo quiso resaltar el hecho de que la jurisdicción primaria y exclusiva sobre estas controversias, pertenece a dicho foro y no será afectada por ningún otro medio de ajuste o prevención.

A pesar de la existencia de esa norma, la propia Junta en aras de que sus funciones se ajusten a los propósitos cardinales de la Ley de Relaciones del Trabajo—paz industrial mediante el fomento de prácticas y procedimientos de negociación colectiva—ha adoptado la doctrina de agotamiento de los remedios contractuales. La misma consiste en negarse a entender e intervenir en casos de violación de convenios cuando las partes no han extinguido los remedios que han provisto en tal documento, para la solución de sus problemas. El fundamento para este proceder lo expuso adecuadamente dicho foro en su decisión de *Simmons Int. Ltd.*, D-92, 2 D.J.R.T. 238, confirmado en 78 D.P.R. 375 (1955), del siguiente modo:

---

1415–16, 56 L.R.R.M. 1321 (1964). Esta posición ha sido sostenida por los tribunales federales. *N.L.R.B.* v. *Strong*, 393 U.S. 357 (1969); *N.L.R.B.* v. *C and C Plywood Corp.*, 385 U.S. 421 (1967); *Carey* v. *Westinghouse Electric Corp.*, 375 U.S. 261 (1964); *Smith* v. *Evening News Assn.*, 371 U.S. 195, 197–198 (1962); *Teamsters Local 174* v. *Lucas Flour Co.*, 369 U.S. 95 (1962); *N.L.R.B.* v. *Brotherhood of Railway, Airline and Steam. Cl.*, 498 F.2d 1105, 1109 (1974); *N.L.R.B.* v. *Chase Manufacturing Company*, 492 F.2d 1302 (1974); *Office and Professional Emp. Int. U., Local 425* v. *N.L.R.B.*, 419 F.2d 314; *Lodge 743, Int. Ass'n, of Mach.* v. *United Aircraft Corp.*, 337 F.2d 5 (1964); *N.L.R.B.* v. *Hershey Chocolate Corp.*, 297 F.2d 286 (1961).

No obstante, es significativo señalar que bajo dicha ley federal—distinto a Puerto Rico—la violación de un convenio colectivo no es una práctica ilícita de trabajo, por lo que una parte no puede acudir a la Junta Nacional para vindicar sus derechos en caso de una violación. En el ámbito federal, la infracción de convenio constituye una mera violación de contrato sujeta a la jurisdicción de los tribunales de acuerdo a lo dispuesto en la Sec. 301 de la mencionada Ley Taft-Hartley (29 U.S.C.A. sec. 185). *Republic Steel Corp.* v. *Maddox*, 379 U.S. 650 (1965); *Charles Dowd Box Co.* v. *Courtney*, 368 U.S. 502 (1962); *Textile Workers* v. *Lincoln Mills*, 353 U.S. 448 (1957); *Volkswagen, Inc.* v. *Puerto Rico Labor Relations Board*, 454 F.2d 38 (1972). En este contexto es que los tribunales y no la Junta Nacional, aplican con rigurosidad la doctrina de agotamiento de remedios contractuales. *Republic Steel Corp.*, supra.

"La política pública expresada por la Legislatura de Puerto Rico en nuestra Ley subraya la necesidad de promover la negociación colectiva como un instrumento eficaz hacia la consecución de la paz industrial. Consideramos que la solución de mutuo acuerdo por las partes, de disputas que puedan surgir como consecuencia de la aplicación de un convenio colectivo, es algo altamente deseable. Tales medidas pueden concebirse como la culminación del proceso de la negociación colectiva. Su adopción y aplicación elimina fricciones y conflictos que generalmente suelen afectar las relaciones de las partes y, por ende, la paz industrial. Alentar tales prácticas es en la realidad estimular la negociación colectiva. Debe considerarse, además, que cuando las partes incorporan medidas de esta naturaleza en un convenio, han seleccionado el método que en su criterio resulta más apropiado para resolver las controversias que puedan surgir a la luz del contrato. Tales acuerdos deben ser respetados. Por tales razones, esta Junta, cumpliendo con el propósito legislativo, generalmente no entiende en casos de violación de convenio cuando las partes no han agotado los remedios que el mismo ofrece para la solución de tales problemas . . . ."

■ No obstante su adopción, siguiendo el pronunciamiento antes transcrito, la Junta no lo ha aplicado inflexiblemente, y en circunstancias extraordinarias, por vía de excepción, ha asumido jurisdicción en casos en que no se han agotado los mecanismos de agravio dispuestos en un convenio. Entre dichas circunstancias—que merecen nuestra aprobación—se encuentran las siguientes: a) cuando el propio convenio colectivo deja a la discreción de las partes la opción de utilizar o no los remedios que se preveen en el mismo para la ventilación de las querellas: *José Ramón Quiñones, h.n.c. Radioemisora Wapa*, D-105, 2 D.J.R.T. 430 (1954); b) cuando una parte querellada no ha alegado, levantado ni probado en la vista que el querellante no ha agotado los remedios contemplados en el convenio para la dilucidación de querellas: *Hermanos Marqués*, D-151, 3 D.J.R.T. 38 (1956); *Simmons International Ltd.*, supra, razonamiento aceptado por este Tribunal en *J.R.T.* v. *Simmons International*, 78 D.P.R. 375 (1955);

c) cuando una Unión como protesta a una violación del convenio colectivo por parte del patrono, lo infringe a su vez con actuaciones prohibidas por el mismo (decretando huelga ilegal): *Unión de Trabajadores de la Santurce Soda Water*, D-245, 4 D.J.R.T. 239 (1961); d) cuando una de las partes ha hecho caso omiso a los requerimientos de la otra de que se sometan las disputas al Comité de Quejas y Agravios: *Sociedad Celia Ferrari*, D-240, 4 D.J.R.T. 182 (1961); *P.R. Stamping Co., Inc.*, D-219, 3 D.J.R.T. 1054 (1960); *The Teamsters*, D-263, 4 D.J.R.T. 468 (1962); e) cuando luego de surgir una controversia por la violación del convenio por parte del patrono, la misma es sometida al comité de quejas y agravios compuesto por 4 miembros, 2 representantes de cada parte y surge un *impasse* respecto a la solución de la controversia y en cuanto al nombramiento de un quinto miembro: *J.R.T.* v. *McConnie*, D-383, 94 D.P.R. 484 (1967).

■ Resulta oportuno aclarar que nuestra reciente decisión en *San Juan Mercantile Corp.* v. *J.R.T.*, 104 D.P.R. 86 (1975), no opera en contra de lo anteriormente expuesto, ya que el lenguaje utilizado[8] más bien describe lo que al presente continúa siendo una sabia norma de política pública que debe ser observada por la Junta. No tiene el efecto de privarle de su jurisdicción primaria sobre empresas no sujetas a la Ley Nacional federal para prevenir y remediar las prácticas ilícitas de trabajo enumeradas en el Art. 8 de la ley, máxime ante el texto claro de que su jurisdicción no será afectada por cualesquiera otros medios de ajuste o prevención.

Teniendo en mente esta perspectiva, pasemos a analizar si en el caso de autos existían circunstancias que ameritasen que la Junta se apartara de la doctrina de agotamiento de remedios contractuales.

---

[8] La allí querellada era una entidad envuelta en el comercio interestatal, y tanto la Junta como este Tribunal, venían obligados a aplicar las normas de derecho sustantivo federal.

■ Surge que la demandada es una instrumentalidad gubernamental, cuyos empleados decretaron una huelga, y como consecuencia se firmó un convenio colectivo, que entre sus cláusulas proveía remedios compulsorios para la solución de controversias. Así las cosas, escasamente al comienzo de su vigencia nace la disputa que hemos descrito. En ese momento ninguna de las dos partes realiza esfuerzo por darle virtualidad a los remedios para dirimir agravios contemplados en el convenio, sino que por el contrario, siguiendo la costumbre de antes, trataron el asunto de manera informal. (⁹) Ante esta situación el único camino rápido y efectivo para la Junta vindicar los derechos de la empleada sobre la conducta de la Unión y el patrono era a través de su intervención directa. Concluir lo contrario, sería debilitar la seriedad, eficacia y utilidad de dicho foro y el convenio recientemente suscrito, vulnerándose dualmente y en grado mayor el mismo. Resulta frágil y tardía la posición de la A.C.A.A. tratando de obviar la jurisdicción de la Junta, bajo pretexto de revertir y agotar los trámites de un arbitraje que no invocó cuando pudo haberlo hecho. No estamos en este caso frente a circunstancias extraordinarias que ameritasen abstención discrecional de la Junta. El ejercicio de su jurisdicción en ley era la única alternativa compatible con el descargo de su encomienda.

Finalmente, el examen del expediente administrativo y la evidencia desfilada no contradicha refleja fehacientemente que la demandada violentó los términos del Convenio extendiendo nombramientos regulares a varios empleados temporales de menor antigüedad en la agencia que la señora Hernández.

*Se dictará Sentencia poniendo en vigor la orden de la Junta fechada 20 de julio de 1977.*

---

(⁹) El Art. VII, inciso (B9) dispone:

"La Administración, los representantes de la Unión, el Comité de Quejas y Agravios y el Arbitro no tendrán autoridad para renunciar, modificar o enmendar las disposiciones de este convenio colectivo."

Los Jueces Asociados Señores Martín y Díaz Cruz concurren en el resultado sin opinión. El Juez Asociado Señor Rigau no intervino.