EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Autoridad de Acueductos y Alcantarillados<br><br>Peticionaria<br><br>v.<br><br>Unión Independiente Auténtica de Empleados de la Autoridad de Acueductos y Alcantarillados<br><br>Recurridos | Certiorari<br><br>2018 TSPR 146<br><br>200 DPR ____ |

Número del Caso: CC-2015-594

Fecha: 6 de agosto de 2018

Tribunal de Apelaciones:

      Región Judicial de San Juan

Abogado de la parte peticionaria:

      Lcdo Obed Morales Colón

Abogado de la parte recurrida:

      Lcdo. Carlos Quirós Méndez

Materia: Derecho Administrativo: Jurisdicción del Tribunal de Apelaciones para atender un recurso de revisión administrativa. Ausencia de jurisdicción de la agencia administrativa. Interpretación del proceso participativo que permite la Ley Núm. 66-2014. Obligatoriedad del procedimiento de arbitraje.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Autoridad de Acueductos
y Alcantarillados

    Peticionaria

                    Núm. CC-2015-594    *Certiorari*
     v.

Unión Independiente Auténtica
de Empleados de la Autoridad
de Acueductos y Alcantarillados

    Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 6 de agosto de 2018.

En el presente caso nos corresponde determinar si el Tribunal de Apelaciones erró al desestimar un recurso de revisión administrativa, por entender que -- conforme a lo dispuesto en la *Ley de la Judicatura*, *infra*, y la *Ley de Procedimiento Administrativo Uniforme*, *infra* -- no estaba ante una determinación final de una agencia administrativa, ni ante un caso claro de falta de jurisdicción de ésta, que le permitiese intervenir en el mismo.

Al examinar detenida y cuidadosamente los hechos y las disposiciones legales aplicables, adelantamos que, contrario a lo resuelto por el foro apelativo intermedio, estamos ante un caso claro de falta de jurisdicción por parte de la agencia

administrativa, por lo que procedía que dicho foro atendiera el recurso de revisión administrativa presentado ante su consideración. Veamos.

I.

Los hechos medulares no están en controversia. El 14 de octubre de 2014 la Unión Independiente Auténtica de Empleados de la Autoridad de Acueductos y Alcantarillados (en adelante "UIA") presentó un recurso de apelación ante la Junta de Relaciones del Trabajo (en adelante "Junta"). En el mismo, alegó que la Autoridad de Acueductos y Alcantarillados (en adelante "AAA"), había alterado significativamente los parámetros del plan médico provisto a su matrícula, en contravención con la Ley Núm. 66-2014, *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico*, *infra*, y el Convenio Colectivo pactado con la UIA.

Oportunamente, la AAA presentó su contestación al referido recurso de apelación. En el mencionado escrito la AAA, en esencia, adujo que la Junta carecía de jurisdicción para atender las controversias ante su consideración, toda vez que el Convenio Colectivo vigente[1] y cierta

---

[1] La AAA y la UIA tenían un Convenio Colectivo vigente, el cual disponía en su Artículo IX (A) un procedimiento para atender querellas, regido por el Reglamento del Negociado de Conciliación y Arbitraje. En el mismo se estableció que:

> Las controversias o querellas que surjan como consecuencia de subcontratación y los casos colectivos se someterán al Procedimiento de Arbitraje que establece este Artículo. Se entenderá como un caso colectivo o de clase, toda controversia que envuelva una misma situación de hechos y una misma disposición de Convenio que afecte el interés de dos (2) o más trabajadores. Apéndice del *certiorari*, pág. 86.

*Estipulación* realizada entre ambas partes en septiembre de 2014 -- como resultado de negociaciones hechas al amparo de la Ley Núm. 66-2014, *infra* --[2] compelían al arbitraje.

Trabadas las controversias, y luego de evaluar los planteamientos de las partes, la Junta ordenó la celebración de una vista administrativa, en la cual estas últimas tuvieron la oportunidad de presentar sus argumentos con relación a si dicho foro tenía jurisdicción para atender los asuntos traídos ante su consideración por la UIA. Cabe señalar que, celebrada la vista en cuestión, la Oficial Examinadora a cargo del proceso recomendó la desestimación del caso por falta de jurisdicción. A dicha recomendación, la UIA se opuso.

Así las cosas, y luego de varios trámites procesales no necesarios aquí pormenorizar, el 9 de marzo de 2015, la Junta emitió una *Resolución* mediante la cual denegó la solicitud de desestimación presentada por la AAA. Dicho foro administrativo concluyó que, en virtud de lo dispuesto en el Art. 14 de la Ley Núm. 66-2014, *infra*, tenía jurisdicción para atender la controversia ante su

---

Además, el mismo artículo define *querella* como "*toda controversia o disputa entre la Unión y la A.A.A., en torno a reclamaciones de los trabajadores cubiertos por este convenio, que surjan en la administración, interpretación y aplicación del mismo*". *Íd.*, pág. 83.

[2] La Ley Núm. 66-2014, *infra*, estableció un proceso participativo que permitía a los patronos y los representantes autorizados de las uniones llevar a cabo negociaciones con relación a la implementación de las medidas dispuestas. Los acuerdos alcanzados en dichas negociaciones, y ratificados por escrito por la matrícula de unionados y el representante autorizado de la entidad ejecutiva correspondiente, podrían sustituir ciertas disposiciones de la ley. Art. 11(i) de la Ley Núm. 66-2014, *infra* (3 LPRA sec. 9117).

consideración. Dicha *Resolución* fue oportunamente notificada a las partes.

Inconforme con dicha determinación, la AAA recurrió ante el Tribunal de Apelaciones, mediante recurso de *certiorari*. Allí sostuvo que la Junta erró al negarse a desestimar el presente pleito, al asumir jurisdicción sobre las controversias presentadas ante su consideración y al ordenar la continuación de los procedimientos ante el foro administrativo. A ello, la UIA se opuso.

Examinados los planteamientos de las partes, el foro apelativo intermedio denegó expedir el recurso, ello tras concluir que -- de conformidad con lo dispuesto en la *Ley de la Judicatura*, *infra*, y la *Ley de Procedimiento Administrativo Uniforme*, *infra* -- la resolución recurrida no era susceptible de ser revisada, por no ser un dictamen final de la agencia administrativa. Concluyó, además, que la determinación sobre la falta de jurisdicción de la Junta para atender los asuntos ante su consideración implicaba un ejercicio de interpretación de los acuerdos entre las partes y la Ley Núm. 66-2014, *infra*, propio de ser realizado por dicho ente administrativo en primera instancia. En consecuencia, dicho foro resolvió que, en lo relacionado al presente recurso, no se encontraba ante un caso claro de falta de jurisdicción de la agencia administrativa, por lo que no estaba en posición de intervenir con la resolución recurrida.

De este dictamen, la AAA recurre ante nos. Aduce que el Tribunal de Apelaciones erró al determinar que no tenía jurisdicción para revisar la *Resolución* de la Junta, por no tratarse de una determinación final de la agencia administrativa, y por no hallarse frente a un caso claro de falta de jurisdicción del referido organismo gubernamental (en este caso, la Junta). La AAA también plantea que el foro apelativo intermedio erró al determinar que le correspondía a la Junta, en primera instancia, interpretar la Ley Núm. 66-2014, *infra*, y los acuerdos entre las partes, ello en aras de establecer si dicho ente administrativo tenía o no jurisdicción para atender los asuntos traídos ante su consideración por la UIA y la AAA. Oportunamente, la UIA presentó ante este Tribunal su alegato en oposición. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

II.

A.

Como es sabido, en reiteradas ocasiones este Tribunal ha sentenciado que las determinaciones hechas por las agencias administrativas están sujetas al proceso de revisión judicial por parte del Tribunal de Apelaciones. Art. 4.006, Ley Núm. 201 de 22 de agosto de 2003, *Ley de la Judicatura de Puerto Rico de 2003* (4 LPRA sec. 24y); *Tosado v. A.E.E.*, 165 DPR 377, 383 (2005); *Procuradora Paciente v. MCS*, 163 DPR 21, 33-34 (2004); *López Rosas v. C.E.E.*, 161 DPR 527, 541 (2004); *Padilla Falú v. A.V.P.*,

155 DPR 183, 190-190 (2001); *J. Exam. Tec. Méd. v. Elías et al.*, 144 DPR 483, 488 (1997). Ahora bien, el ámbito de revisión judicial de dichas determinaciones administrativas está sujeto a ciertos límites de naturaleza prudencial y estatutaria.

En particular, el Artículo 4.006 de la Ley de la Judicatura, *supra*, dispone que el Tribunal de Apelaciones podrá revisar "**decisiones, órdenes y resoluciones finales** de organismos o agencias administrativas". Por su parte, la LPAU, *supra* -- vigente al momento en que ocurrieron los hechos del presente caso -- establecía de forma expresa que una orden o resolución interlocutoria no podía ser revisada directamente, ya que ésta podía, en su día, revisarse junto a la **orden o resolución final** que emitiera la agencia. Sección 4.2 de la *Ley de Procedimiento Administrativo Uniforme* (LPAU), Ley Núm. 170 de 12 de agosto de 1988 (3 LPRA sec. 2172) (ed. 2009).[3]

---

[3] Hacemos referencia a esta disposición, ya que es la que se encontraba vigente al momento de los hechos del caso ante nos. Sin embargo, es preciso recordar que la misma fue enmendada por el Art. 58 de la Ley Núm. 210-2016 (3 LPRA sec. 2172)(Supl. 2017). La sección enmendada disponía:

> Una orden o resolución interlocutoria de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente. La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia. No obstante, serán revisables directamente ante el Tribunal Apelativo, mediante recurso de certiorari, aquellos planteamientos en torno a la ausencia de jurisdicción de la agencia u órdenes preliminares dictadas bajo el alcance del Procedimiento Adjudicativo de Acción Inmediata.

Cabe señalar, sin embargo, que esta sección fue derogada por la Ley Núm. 38-2017, también conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*. El texto de la

De otra parte, la sección 4.2 de la LPAU, (3 LPRA sec. 2172) (ed. 2009) -- según vigente al momento de los hechos de este caso -- disponía que "[u]na parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente […]" podía solicitar revisión ante el Tribunal de Apelaciones.[4]

---

ley vigente es idéntico al de la disposición en cuestión. La sección 4.2 de la Ley Núm. 38-2017, *supra*, lee de la siguiente forma:

> Una orden o resolución interlocutoria de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente. La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia.

[4] Es menester señalar que esta sección fue enmendada por el Art. 57 de la Ley Núm. 210-2016 (3 LPRA sec. 2171)(Supl. 2017). Dicha ley colocó las disposiciones equivalentes a esta en las Secciones 4.2 y 4.3. En la sección 4.2, la Ley Núm. 210-2016, *supra*, disponía:

> Cualquier parte podrá presentar una revisión judicial ante el Tribunal de Apelaciones dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 2165 de este título cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. (3 LPRA sec. 2172)(Supl. 2017).

Así también, la sección 4.3 de la Ley Núm. 210-2016, *supra*, establecía que:

> Toda parte deberá agotar los correspondientes remedios administrativos provistos en la ley o en los reglamentos de la agencia. Esa exigencia será aplicable en casos en los cuales una parte, que instó o tiene instada alguna causa de acción ante una agencia administrativa, recurre ante algún tribunal sin antes haber completado todo el trámite administrativo disponible. Para que pueda aplicarse la doctrina de agotar remedios es menester que exista aún alguna fase del procedimiento que la parte concernida deba agotar. Este requisito es de naturaleza jurisdiccional por lo que un tribunal no podrá asumir jurisdicción sobre una controversia en aquellas ocasiones en las cuales no hayan sido

**Sobre este particular, es menester señalar que este Tribunal ha reconocido que esta sección limitó la revisión judicial de decisiones administrativas a aquellas instancias que cumplan con dos requisitos, a saber: (1) que se trate de órdenes o resoluciones finales y (2) que la parte que solicita la revisión haya agotado todos los remedios provistos por la agencia administrativa.** *Fuentes Bonilla v. Estado Libre Asociado de Puerto Rico*, 2018 TSPR 98, 200 DPR __ (2018); *A.A.A. v. U.I.A.*, 2018 TSPR 17, 199 DPR __ (2018); *A.R.Pe. v. Coordinadora*, 165 DPR 850, 866 (2005); *Tosado v. A.E.E.*, *supra*, pág. 384; *Procuradora Paciente v. MCS*, *supra*, pág. 34-35; *J. Exam. Tec. Méd. v. Elías et al.*, *supra*, pág. 489.

Si bien la LPAU, vigente al momento en que ocurrieron los hechos de este caso, no definía específicamente qué constituía una *orden o resolución final*,[5] este Tribunal ha

---

agotados los remedios administrativos. (3 LPRA sec. 2173)(Supl. 2017).

No obstante, estas secciones fueron derogadas por la Ley Núm. 38-2017, *supra*. Ahora bien, el texto de la ley vigente es idéntico al de la disposición en cuestión. En lo pertinente, la sección 4.2 de la Ley Núm. 38-2017, *supra*, ahora dispone lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones.

[5] La sección 1.3 de la LPAU disponía las siguientes definiciones:

> (f) **Orden o resolución**—Significa cualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas, o que imponga penalidades o sanciones administrativas excluyendo órdenes ejecutivas emitidas por el Gobernador.

resuelto que se trata de aquella determinación de la agencia administrativa que pone fin a los procedimientos en un foro determinado y tiene un efecto sustancial para las partes. *Comisionado de Seguros v. Universal*, 167 DPR 21, 29 (2006); *A.R.Pe. v. Coordinadora, supra; Tosado v. A.E.E., supra; Padilla Falú v. A.V.P., supra; J. Exam. Tec. Méd. v. Elías et al., supra; Pueblo ex rel. R.S.R.,* 121 DPR 293 (1988). Asimismo, el Tribunal Supremo federal ha establecido que para que una determinación administrativa se considere final: "[f]irst, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Engineers v. Hawkes Co., Inc.,* 136 S.Ct. 1807, 1813 (2016); *Bennett v. Spear,* 520 US 154, 177-178 (1997). *Véanse,* además, *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.,* 333 US 103, 113 (1948); *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic,* 400 US 62, 71 (1970); 2 *Pierce,*

---

(g) **Orden o resolución parcial**—Significa la acción agencial que adjudique algún derecho u obligación que no ponga fin a la controversia total sino a un aspecto específico de la misma.

(h) **Orden interlocutoria**—Significa aquella acción de la agencia en un procedimiento adjudicativo que disponga de algún asunto meramente procesal. Sec. 1.3 de la LPAU, *supra* (3 LPRA sec. 2102) (ed. 2009).

*Administrative Law Treatise 5th* sec. 15.11 pág. 1309 (2010).

B.

Establecido lo anterior, precisa señalar aquí que, además de lo antes dicho, la revisión judicial en este tipo de casos también está limitada por la doctrina de agotamiento de remedios administrativos. Al amparo de dicha doctrina, una parte que desea obtener un remedio en una agencia debe utilizar todos los medios administrativos disponibles antes de acudir a un tribunal. Ello implica, pues, que la revisión judicial no está disponible hasta tanto la parte afectada haya utilizado todos los procedimientos correctivos ofrecidos por el procedimiento administrativo. *Guzmán y otros v. E.L.A.*, 156 DPR 693, 711 (2002); *Municipio de Caguas v. AT&T*, 154 DPR 401, 407 (2001); *Colón Ventura v. Méndez*, 130 DPR 433, 443 (1992).

Como es sabido, la mencionada doctrina busca cumplir varios objetivos, entre los cuales se encuentran: permitir que la agencia pueda desarrollar un historial completo del asunto ante su consideración; asegurar que la agencia pueda adoptar las medidas correspondientes de conformidad con la política pública formulada por la entidad, y evitar los disloques causados por las intervenciones inoportunas de los tribunales en distintas etapas interlocutorias. Por otro lado, la doctrina en cuestión facilita la revisión judicial, ya que asegura que los tribunales tengan información más precisa sobre el asunto en controversia y

les permite tomar una decisión más informada. De igual forma, promueve una distribución más eficiente de tareas entre los poderes ejecutivo y judicial. *Procuradora Paciente v. MCS*, *supra*, pág. 35; *Guadalupe v. Saldaña, Pres. U.P.R.*, 133 DPR 42, 49 (1993); *Rivera v. E.L.A.*, 121 DPR 582, 595 (1992). En fin, los contornos de esta norma han sido elaborados por medio de jurisprudencia y la misma ha sido adoptada por nuestra legislación en las Secciones 4.2 y 4.3 de la LPAU, *supra*. D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013, sec. 8.7, pág. 604.

C.

Establecido lo anterior, y en vista de las controversias ante nuestra consideración, es menester reconocer aquí que la doctrina de agotamiento de remedios administrativos y el requisito de finalidad pueden resultar difíciles de distinguir. De hecho, en muchos casos, los tribunales se refieren a estas doctrinas indistintamente. *Pierce, supra,* sec. 15.1, pág. 1219.

Por su parte, este Tribunal ha reiterado que ambas doctrinas tienen un alcance análogo y que, de ordinario, gozan de las mismas excepciones. *Procuradora del Paciente v. MCS*, *supra*, pág. 38; *J. Exam. Tec. Méd. v. Elías et al.*, *supra*, pág. 491. *Véase*, además, *A.R.Pe. v. Coordinadora*, *supra*, esc. 22.

En lo pertinente a la causa de epígrafe, la Sección 4.3 de la LPAU, vigente al momento de los hechos, disponía lo siguiente:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o **cuando sea un caso claro de falta de jurisdicción de la agencia**, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. (Énfasis suplido).[6]

---

[6] Hacemos referencia a esta disposición, ya que es la que se encontraba vigente al momento de los hechos del presente caso. Ahora bien, la misma fue enmendada por el Art. 59 de la Ley Núm. 210-2016 (3 LPRA sec. 2173)(Supl. 2017). En lo pertinente, la sección 4.3 enmendada disponía:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado; cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios; cuando existe peligro de daño inminente; cuando se alegue la violación sustancial de derechos constitucionales; o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos. (3 LPRA sec. 2173)(Supl. 2017).

La precitada sección fue derogada por la Ley Núm. 38-2017, *supra*. Dicha ley restituyó el lenguaje anterior a las enmiendas, por lo que el texto de la ley vigente es idéntico al de la disposición en cuestión. La nueva sección 4.3 lee de la siguiente forma:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia

**Cónsono con lo anterior, en múltiples ocasiones este Tribunal ha reconocido como excepción a la norma de finalidad una situación de clara falta de jurisdicción de la agencia administrativa**. *A.A.A. v. U.I.A.*, *supra*; *Comisionado de Seguros v. Universal*, 167 DPR 21, 30 (2006); *Procuradora del Paciente v. MCS*, *supra*, pág. 38; *J. Exam. Tec. Med. v. Elías et al.*, *supra*, págs. 491-492; *Colón Ventura v. Méndez*, *supra*, pág. 444; *Vélez Ramírez v. Romero Barceló*, 112 DPR 716, 723 (1982). A tenor con ello, un tribunal puede preterir el trámite administrativo cuando se impugne la jurisdicción de la agencia y de las alegaciones se desprende claramente que esta carece de jurisdicción. *A.A.A. v. U.I.A.*, *supra*; *Asociación de Pescadores de Punta Figueras, Inc. v. Marina de Puerto del Rey, Inc.*, 155 DPR 906, 917 (2001), *J. Exam. Tec. Méd. v. Elías et al.*, *supra*, pág. 492; *Colón Ventura v. Méndez*, *supra*, pág. 444; *Vélez Ramírez v. Romero Barceló*, *supra*, pág. 725.

**Precisa señalar que la precitada norma parte de la premisa de que, si una agencia no tiene jurisdicción para adjudicar una controversia, su actuación sería** *ultra vires*. **Por lo tanto, resultaría injusto requerir a una parte que litigue su caso ante la agencia, únicamente para cumplir con el requisito de finalidad.** *Comisionado de Seguros v. Universal*, *supra*, pág. 30; *J. Exam. Tec. Méd.*

administrativa. Sección 4.3 de la Ley Núm. 38-2017, *supra*.

*v. Elías et al.*, *supra*, pág. 492. *Véase*, además, *Vélez Ramírez v. Romero Barceló*, *supra*. Ello, pues requerir el agotamiento de remedios "en esas circunstancias sería una futilidad en términos de tiempo y dinero, porque finalmente el foro judicial, con toda probabilidad, invalidaría el proceso. Así, en la medida que la cuestión jurisdiccional es menos clara y disminuyen estos riesgos, es adecuado compeler a que se agoten dichos remedios". *J. Exam. Tec. Méd. v. Elías et al.*, *supra*, 492; *Vélez Ramírez v. Romero Barceló*, *supra*, pág. 725. *Véanse*, además, *Procuradora del Paciente v. MCS*, supra, pág. 36 ("Algunos de los factores que inclinan la balanza a favor de la preterición del requisito de agotamiento son: […] (ii) que el remedio administrativo constituya una gestión inútil, inefectiva y que no ofrece un remedio adecuado".); *Viuda de Iturregui v. E.L.A.*, 99 DPR 488, 493 (1970).

Ahora bien, es importante tener presente que no toda alegación de ausencia de jurisdicción tendrá el efecto de eximir a una parte de agotar los procedimientos ante una agencia administrativa, ni implicará una aplicación automática de la excepción. *Comisionado de Seguros v. Universal*, *supra*, págs. 30-31; *Procuradora del Paciente v. MCS*, *supra*, pág. 45; *Colón Ventura v. Méndez*, *supra*, pág. 444. Por ello, hemos aclarado que sólo en aquellos casos en que la agencia carece realmente de jurisdicción es que el proceso administrativo se convierte en final por no quedar asuntos o controversias pendientes por dilucidar en

la agencia. Sólo entonces el asunto interlocutorio sería revisable por el Tribunal de Apelaciones. *A.A.A. v. U.I.A.*, *supra*; *Comisionado de Seguros v. Universal*, *supra*, pág. 31. *Véanse*, además, *A.R.Pe. v. Coordinadora*, *supra*, pág. 867 ("[L]a orden o resolución final es aquella que pone fin a todas las controversias dilucidadas ante la agencia".); *Tosado v. A.E.E.*, *supra*; *Padilla Falú v. A.V.P.*, *supra*; *J. Exam. Tec. Méd. v. Elías et al.*, *supra*; *Pueblo ex rel. R.S.R.*, *supra*.

**Sobre este particular hemos resuelto que**, "[a]nte una **alegación de ausencia de jurisdicción, es a la propia agencia, salvo unas excepciones, a la que le corresponde hacer una determinación inicial de su propia jurisdicción**". *Comisionado de Seguros v. Universal, supra*, págs. 30-31; *Procuradora del Paciente v. MCS*, *supra*, pág. 45; *Colón Ventura v. Méndez*, *supra*, pág. 444. **Sin embargo, también hemos reconocido que "cuando se trata de un caso claro de falta de jurisdicción, el asunto es enteramente de la competencia judicial".** *J. Exam. Tec. Méd. v. Elías et al.*, *supra*, pág. 492 (Énfasis suplido). *Véanse*, además, *Vélez Ramírez v. Romero Barceló*, *supra*, pág. 725; *Procuradora del Paciente v. MCS*, *supra*, pág. 36; *Viuda de Iturregui v. E.L.A.*, *supra*, pág. 493.

Cónsono con lo anterior, este Tribunal ha adoptado tres (3) criterios a utilizarse ante un señalamiento de ausencia de jurisdicción de la agencia administrativa. En primer lugar, debe considerarse el riesgo de que se

ocasione un daño irreparable si el tribunal pospone su intervención. En segundo lugar, debemos evaluar el grado de claridad con que surja la carencia o tenencia de jurisdicción. En tercer lugar, debemos considerar la pericia que tenga la agencia para dilucidar las cuestiones jurisdiccionales. *Colón Ventura v. Méndez*, *supra*, pág. 444; *Vélez Ramírez v. Romero Barceló*, *supra*, pág. 723. *Véase*, además, *Procuradora del Paciente v. MCS*, *supra*, pág. 36.

Al examinar la disposición estatutaria sobre las excepciones al agotamiento de remedios administrativos y al requisito de finalidad, el profesor Demetrio Fernández Quiñones, en su obra *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, comenta:

> Se releva de agotar remedios "cuando sea un caso claro de falta de jurisdicción de la agencia". Si la agencia carece de jurisdicción, es absolutamente innecesario que se contemple tan siquiera la posibilidad de recurrir a la doctrina del agotamiento de remedios. Dos errores fundamentales se encuentran en lo regulado. Primero, la eterna confusión entre la doctrina de la jurisdicción primaria y la del agotamiento de remedios. Tan pronto se determina que no hay jurisdicción, huelga toda idea de agotar remedios. Segundo, la inexistencia de jurisdicción – en un caso claro – presupone que es un asunto enteramente de la competencia judicial. En cuyo caso es necesario sólo examinar la cuestión a tenor con el procedimiento judicial pertinente a la acción judicial. Por encima de lo señalado queda por definirse lo que es "caso claro", lenguaje que en el contexto en que se usa sólo puede atisbar a una situación donde la actuación de la agencia sería *ultra vires*. El lenguaje debe ser eliminado de la ley por lo innecesario, confuso y desacertado. Fernández Quiñones, *op. cit.*, sec. 8.8, págs. 626-627.

Como podemos apreciar, nuestra jurisprudencia ha ido dando forma a las excepciones dispuestas en la Sección 4.3 de la LPAU, *supra*. Ahora bien, cabe señalar que el legislador también ha realizado ciertos intentos de afinar la norma. Aunque dichos cambios fueron realizados con posterioridad a los hechos del caso de marras, es pertinente mencionarlos como parte del desarrollo de la doctrina en discusión.

D.

Así pues, el 30 de diciembre de 2016, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 210-2016, denominada la *Ley de Reforma del Derecho Administrativo* (3 LPRA sec. 2101 *et seq.*) (Supl. 2017), la cual introdujo varias enmiendas a la LPAU, *supra*. En particular, y como ya mencionamos, debemos prestar atención a las enmiendas realizadas a las Secciones 4.3 y 4.2 de la ley. La Sección 4.3 enmendada leía de la siguiente forma:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado; cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios; cuando existe peligro de daño inminente; cuando se alegue la violación sustancial de derechos constitucionales; o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos. Art. 59 de la Ley Núm. 210-2016, *supra* (3 LPRA sec. 2173) (Supl. 2017).

Cabe observar que se eliminó de esta sección la excepción de *clara falta de jurisdicción*. Sin embargo, al

enmendar la Sección 4.2 de la ley, claramente y sin ambages, se dispuso que **"serán revisables directamente ante el Tribunal Apelativo**, mediante recurso de *certiorari,* **aquellos planteamientos en torno a la ausencia de jurisdicción de la agencia** u órdenes preliminares dictadas bajo el alcance del Procedimiento Adjudicativo de Acción Inmediata". Art. 58 de la Ley Núm. 210-2016, *supra* (3 LPRA sec. 2172) (Supl. 2017)(Énfasis suplido). Estos cambios parecen cónsonos con las críticas que el profesor Demetrio Fernández Quiñones había realizado al contenido de estas secciones. Fernández Quiñones, *op. cit.*

Vemos, pues, que la Ley Núm. 210-2016, *supra*, al igual que la antigua LPAU, reconocía que cuando una agencia carece de jurisdicción es innecesario acudir a las doctrinas de agotamiento de remedios y de finalidad. En dicha disposición se incorporó también lo ya resuelto por este Tribunal con relación a que un caso claro de falta de jurisdicción es enteramente de la competencia judicial. *J. Exam. Tec. Méd. v. Elías et al., supra. Véanse*, además, *Vélez Ramírez v. Romero Barceló, supra*, pág. 725; *Procuradora del Paciente v. MCS, supra*, pág. 36; *Viuda de Iturregui v. E.L.A., supra*, pág. 493.

Posteriormente, la Ley Núm. 38-2017, también conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, derogó la Ley Núm. 210-2016, *supra*, y la Ley Núm. 170 de 12 de agosto de 1988, *supra*,

y con ellas, las enmiendas antes mencionadas. La Sección 4.3 hoy vigente lee como sigue:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. Sección 4.3 de la Ley Núm. 38-2017, *supra*.

Por su parte, la nueva Sección 4.2 dispone lo siguiente:

> Una orden o resolución interlocutoria de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente. La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia. Sección 4.2 de la Ley Núm. 38-2017, *supra*.

Como se puede colegir, esta ley restableció el lenguaje anterior a las referidas enmiendas, por lo que el texto de la LPAU vigente es idéntico al de las disposiciones en vigor al momento de ocurrir los hechos del caso de autos.

III.

A.

De otra parte, y para la correcta disposición de las controversias ante nos, es menester señalar también que la *Ley Especial de Sostenibilidad Fiscal*, Ley Núm. 66-2014 (3

LPRA sec. 9101 *et seq*.) -- una legislación de carácter socioeconómico -- fue aprobada por la Asamblea Legislativa del país con el propósito de permitirle al Estado Libre Asociado de Puerto Rico contar con liquidez suficiente para poder pagar su nómina y sufragar servicios esenciales, mediante la implementación de medidas de reducción de gastos y estabilización fiscal. *Véase* Exposición de Motivos de la Ley Núm. 66-2014, *supra*. **Dicha ley dispone en su Art. 14 que "la Junta de Relaciones del Trabajo, o la entidad sucesora de esta, tendrá jurisdicción primaria exclusiva para atender apelaciones surgidas como consecuencia de acciones o decisiones tomadas conforme a este subcapítulo, de aquellos empleados cubiertos por las secs. 61 et seq. del Título 29"**. Art. 14 de la Ley Núm. 66-2014, *supra* (3 LPRA sec. 9120). Por otra parte, la Ley de Relaciones del Trabajo concede jurisdicción exclusiva a la Junta de Relaciones del Trabajo para atender asuntos que pretendan evitar prácticas ilícitas de trabajo. Art. 7 de la Ley Núm. 130 de 8 de mayo de 1945 (29 LPRA sec. 68).

B.

Ahora bien, no empece a lo antes dicho, es también norma reconocida en nuestro ordenamiento jurídico que el procedimiento acordado en un convenio colectivo para el procesamiento de quejas y agravios y para su decisión o arbitraje debe cumplirse estrictamente. *Hermandad de Empleados v. F.S.E.*, 112 DPR 51, 53 (1982); *San Juan*

*Mercantile Corp. v. J.R.T.*, 104 DPR 86, 90 (1975). *Véanse*, además, *Buena Vista Dairy, Inc. v. J.R.T.*, 94 DPR 624, 631 (1967). En *San Juan Mercantile Corp. v. J.R.T.* expresamos lo siguiente:

> Bajo la vigencia de un convenio, según un patrono no puede hacer caso omiso de la unidad contratante y negociar individualmente con cada empleado por separado, tampoco puede el empleado desentenderse del convenio y actuar como si el mismo no existiese. Igualmente ocurre en lo referente a la dilucidación de los asuntos que deben ir a los comités de quejas y agravios establecidos por el convenio. Como dijimos en *Rivera Adorno*, supra, ni el patrono ni los obreros pueden pretender beneficiarse de ciertas cláusulas del convenio colectivo y rechazar otras. El convenio es un contrato y vincula a ambas partes por igual. *San Juan Mercantile Corp. v. J.R.T.*, supra, pág. 89.

**En dicha opinión, resolvimos que cuando en un convenio colectivo se incluyen cláusulas en las cuales se dispone para el procesamiento de quejas y su arbitraje, éstas deben ser observadas por todos los que intervienen en las relaciones obrero patronales. Esto incluye a los obreros, patronos, uniones, la Junta de Relaciones del Trabajo y los tribunales.** *Íd.*, **pág. 90.** Asimismo, "no puede permitirse que la implementación de un procedimiento de arbitraje, previamente pactado, dependa de los deseos de una de las partes de comparecer al mismo". *Hermandad de Empleados v. F.S.E.*, supra, pág. 56; *A.A.A. v. U.I.A.*, supra; *Hietel v. PRTC*, 182 DPR 451, 462 (2011); *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 DPR 62, 69 (1987).

Lo anterior es cónsono con la política pública adoptada por el Estado Libre Asociado de Puerto Rico, la

cual busca disponer de medios adecuados para resolver pacíficamente las controversias obrero-patronales. Art. 1 de la Ley de Relaciones del Trabajo, *supra* (29 LPRA sec. 62). Además, en nuestro país existe una vigorosa política pública a favor del arbitraje obrero-patronal. *Departamento de Educación v. Díaz Maldonado*, 183 DPR 315, 325 (2011); *C.O.P.R. v. S.P.U.*, 181 DPR 299, 323 (2011); *Vélez v. Serv. Legales de P.R., Inc.*, 144 DPR 673, 682 (1998); *Martínez Rodríguez v. A.E.E.*, 133 DPR 986, 995 (1993); *Pagán v. Fund. Hosp. Dr. Pila*, 114 DPR. 224, 232 (1983); *Beauchamp v. Dorado Beach Hotel*, 98 DPR 633, 639 (1970). Esto es así, pues se ha reconocido que el arbitraje constituye un medio más apropiado que los tribunales para la resolución de controversias, por ser más flexible, y menos técnico y oneroso. *Autoridad de Puertos v. HEO*, 186 DPR 417, 425 (2012); *Departamento de Educación v. Díaz Maldonado*, *supra*, pág. 325; *C.O.P.R. v. S.P.U.*, *supra*, pág. 324; *Vélez v. Serv. Legales de P.R., Inc.*, *supra*, pág. 682; *Martínez Rodríguez v. A.E.E.*, *supra*, pág. 995; *Pagán v. Fund. Hosp. Dr. Pila*, *supra*, pág. 228; Pérez *v. A.F.F.*, 87 DPR 118, 127 (1963).

A tono con lo anterior, la propia Junta de Relaciones del Trabajo ha adoptado la doctrina de agotamiento de remedios contractuales. La misma consiste en que la Junta no atenderá planteamientos de violación a un convenio colectivo, hasta tanto las partes hayan agotado los remedios provistos en dicho convenio para la solución de

sus problemas. De este modo, la Junta rehusará asumir jurisdicción sobre la controversia, a menos que el agotamiento resulte ser un gesto fútil y vacío, irreal o imposible, o que la unión falte a su deber de una justa representación. *A.A.A. v. U.I.A.*, *supra*; *Martínez Rodríguez v. A.E.E.*, *supra*, pág. 994; *Vega Colón v. Corp. Azucarera de P.R.*, 123 DPR 859, 863 (1989); *J.R.T. v. A.C.A.A.*, 107 DPR 84, 90-91 (1978). *Véase* también *J.R.T. v. Simmons International, Ltd.*, 78 DPR 375 (1955).[7]

En *P.R.T.C. v. Unión Independiente de Empleados Telefónicos,* 131 DPR 171 (1992), señalamos que esta norma de abstención aplica, particularmente, en casos de violación de convenio colectivo en los cuales las partes

---

[7] El fundamento para este proceder fue provisto por la Junta en su decisión en Simmons Int. Ltd., D-92, 2 DJRT 238, la cual fue confirmada por este Tribunal en *J.R.T. v. Simmons International, Ltd.*, 78 DPR 375 (1955). Posteriormente, en *J.R.T. v. A.C.A.A.*, 107 DPR 84 (1978), este Tribunal reiteró esta norma al citar con aprobación las expresiones de la Junta de que:

> La política pública expresada por la Legislatura de Puerto Rico en nuestra Ley subraya la necesidad de promover la negociación colectiva como un instrumento eficaz hacia la consecución de la paz industrial. Consideramos que la solución de mutuo acuerdo por las partes, de disputas que puedan surgir como consecuencia de la aplicación de un convenio colectivo, es algo altamente deseable. Tales medidas pueden concebirse como la culminación del proceso de la negociación colectiva. Su adopción y aplicación elimina fricciones y conflictos que generalmente suelen afectar las relaciones de las partes y, por ende, la paz industrial. Alentar tales prácticas es en la realidad estimular la negociación colectiva. Debe considerarse, además, que cuando las partes incorporan medidas de esta naturaleza en un convenio, han seleccionado el método que en su criterio resulta más apropiado para resolver las controversias que puedan surgir a la luz del contrato. Tales acuerdos deben ser respetados. Por tales razones, esta Junta, cumpliendo con el propósito legislativo, generalmente no entiende en casos de violación de convenio cuando las partes no han agotado los remedios que el mismo ofrece para la solución de tales problemas. *J.R.T. v. A.C.A.A.*, 107 DPR 84, 91 (1978) (Citando *Simmons Int. Ltd.*, D-92, 2 DJRT 238).

han provisto el remedio de arbitraje. En dichos casos, este Tribunal no ha vacilado en poner en vigor el requisito de agotamiento de remedios contractuales previo a una intervención de la Junta de Relaciones del Trabajo. *Vélez v. Serv. Legales de P.R., Inc.*, supra; *Martínez Rodríguez v. A.E.E.*, supra; *Pagán v. Fund. Hosp. Dr. Pila*, supra; *Hermandad Unión de Empleados v. F.S.E.*, supra; *San Juan Mercantile Corp. v. J.R.T.*, supra.

Esta doctrina de abstención está sujeta a una serie de excepciones que han sido desarrolladas por la Junta y avaladas por este Tribunal en *J.R.T. v. A.C.A.A.*, supra. La Junta podría asumir jurisdicción sin necesidad de agotar los mecanismos dispuestos en el convenio: cuando el arbitraje pactado es de carácter voluntario y el propio convenio deja a la discreción de las partes la opción de utilizarlo; cuando una parte querellada no ha planteado ni probado que el querellante no ha agotado los remedios provistos; cuando una unión, como protesta a la violación del convenio colectivo por parte del patrono, también lo viola; cuando una de las partes ha hecho caso omiso a los requerimientos de la otra de que se someta al arbitraje; y cuando surge un *impasse* respecto a la solución de la controversia y en cuanto al nombramiento de un árbitro. *J.R.T. v. A.C.A.A.*, supra, págs. 91-92. *Véanse*, además, *Martínez Rodríguez v. A.E.E.*, supra, esc. 7; *F.S.E v. J.R.T.*, 111 DPR 505, 516 (1981); D. Fernández Quiñones, *El arbitraje obrero-patronal*, 1ra ed., Colombia, Ed. Forum,

2000, sec. 9.6, pág. 639. Ahora bien, estas excepciones pueden resumirse en dos elementos principales: que el procedimiento de arbitraje dispuesto no es de carácter obligatorio; o que ha sido dejado sin efecto por alguna de las partes. D. Fernández Quiñones, *El arbitraje obrero-patronal*, *op. cit.*, pág. 639. Lo que queda claro es que en los casos en que el procedimiento de arbitraje sea vinculante para las partes, es menester agotar los remedios contractuales. *Íd*. Más aun, cuando en un convenio colectivo se dispone un procedimiento de arbitraje obligatorio, la facultad de la agencia administrativa para atender la controversia queda superada por esa disposición. *Íd.*, pág. 641. *Véase*, además, *San Juan Mercantile Corp. v. J.R.T.*, *supra*.

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer de las controversias ante nos.

IV.

En el presente caso, la alegación en la cual se basa la queja llevada ante la Junta es que la AAA violó los términos del Convenio, al alterar significativamente los parámetros acordados para las cubiertas del plan médico.[8] La UIA también planteó que se violó la Ley Núm. 66-2014, *supra*, ya que dichos cambios no fueron acordados en las

---

[8] *Véanse* Carta del presidente de la UIA del 1 de octubre de 2014, Apéndice del *certiorari*, pág. 46; *Apelación* presentada por la UIA ante la JRT, Apéndice del *certiorari*, pág. 54.

negociaciones hechas al amparo de esta ley.[9] Tanto la Junta como la UIA, se valen de este planteamiento de violación a la Ley Núm. 66-2014 para llegar a la conclusión de que la Junta ostenta jurisdicción exclusiva sobre la controversia, al amparo del Art. 14 de dicha ley. No les asiste la razón. Recalcamos nuevamente que en la *Estipulación* del 13 de septiembre de 2014, la cual se hizo conforme a lo dispuesto a la Ley Núm. 66-2014, *supra,* se ratificó la aplicación del Convenio, incluyendo la cláusula que dispone el procedimiento de arbitraje.

Recordemos que la Ley Núm. 66-2014, *supra*, estableció un proceso participativo, que permitía a los patronos y los representantes autorizados de las uniones llevar a cabo negociaciones con relación a la implementación de las medidas dispuestas por dicha ley. Los acuerdos alcanzados en dichas negociaciones y ratificados por escrito por la matrícula de unionados y el representante autorizado de la entidad ejecutiva correspondiente podrían sustituir ciertas disposiciones de la ley. Art. 11(i) de la Ley Núm. 66-2014, *supra* (3 LPRA sec. 9117).[10]

Conforme al referido proceso participativo, la AAA y la UIA llevaron a cabo las negociaciones correspondientes y llegaron a varios acuerdos que quedaron plasmados en una

---

[9] *Apelación* presentada por la UIA ante la JRT, Apéndice del *certiorari*, pág. 54.

[10] El Art. 11 dispone que los acuerdos alcanzados en las negociaciones "*sustituirán lo dispuesto en los incisos (a), (b), (c) y (d) de esta sección y **cualquier otra disposición que resulte pertinente en este capítulo y que haya sido objeto de la negociación**". Art. 11(i) de la Ley Núm. 66-2014 (3 LPRA sec. 9117)(Énfasis suplido).

*Estipulación* firmada el 13 de septiembre de 2014. Las partes acordaron someter cualquier violación de dicha estipulación a un procedimiento de arbitraje acelerado ante el Negociado de Conciliación y Arbitraje. Cabe señalar que, en dicha Estipulación, nada se dispuso ni modificó en cuanto a las cubiertas del plan médico, por lo que, en este caso, no es de aplicación el referido arbitraje acelerado. No obstante, las partes estipularon que "por mutuo acuerdo, han consentido a que el Convenio Colectivo se mantenga vigente en todas sus cláusulas excepto aquellos cambios incluidos en esta Estipulación hasta la fecha de su vencimiento, el 31 de diciembre de 2017". *Véase* Apéndice del *certiorari*, pág. 73. **Es decir, cualquier violación al Convenio Colectivo continuaría sujeta al procedimiento de arbitraje dispuesto en el Artículo IX (A) del mismo.**

El referido artículo disponía que:

> Las controversias o querellas que surjan como consecuencia de subcontratación y los casos colectivos se someterán al Procedimiento de Arbitraje que establece este Artículo. Se entenderá como un caso colectivo o de clase, toda controversia que envuelva una misma situación de hechos y una misma disposición de Convenio que afecte el interés de dos (2) o más trabajadores. Apéndice del *certiorari*, pág. 86.

Además, el mismo artículo define *querella* como "toda controversia o disputa entre la Unión y la A.A.A., en torno a reclamaciones de los trabajadores cubiertos por este convenio, que surjan en la administración, interpretación y aplicación del mismo". *Íd.*, pág. 83.

Como ya hemos mencionado, las cláusulas pactadas en el Convenio para el procesamiento de disputas deben ser cumplidas estrictamente. La Junta no podía atender planteamientos de violación al Convenio Colectivo, hasta tanto las partes hubieran agotado los remedios provistos en dicho convenio para la solución de sus problemas.

En el caso de autos, al haber pactado las partes un proceso de arbitraje obligatorio en el Convenio Colectivo, correspondía que la Junta rehusara asumir jurisdicción sobre la controversia en esa etapa del proceso. Es decir, procedía agotar los remedios contractuales y, por tanto, en ese momento, era el Negociado de Conciliación y Arbitraje el foro en el cual se debía dilucidar la disputa.

Así las cosas, y conforme a la normativa antes expuesta, surge claramente que en este caso la Junta debía rehusarse a asumir jurisdicción para atender la controversia, ya que la misma debía someterse al procedimiento de arbitraje pactado en el Convenio.[11]

Al tratarse de un caso claro de falta de jurisdicción de la agencia, se entiende que no quedan asuntos pendientes

---

[11] Esto no implica que, luego de emitirse el laudo arbitral, la Junta no tenga jurisdicción para intervenir, toda vez que, según señalamos en *A.A.A. v. U.I.A.*, 2018 TSPR 17, 199 DPR __ (2018), este organismo *"no pierde su jurisdicción exclusiva para disponer de asuntos referentes a prácticas ilícitas del trabajo, independientemente de que existan otros procedimientos en los que puedan atender las controversias planteadas ante esta entidad"*. Además, el referido caso tenía la particularidad de que *"la reclamación presentada ante el árbitro se fundamentó en una disposición del convenio colectivo mientras que la acción instada ante la Junta fue al amparo de una presunta violación a la Ley Núm. 130"*. *Íd.* En dicha ocasión, sin embargo, nos enfrentamos a una situación distinta a la del presente caso, ya que el procedimiento se encontraba en una etapa post-arbitraje.

de dilucidar por la misma. En el presente caso -- aunque la Junta no pierde su jurisdicción para, posteriormente, dilucidar el asunto de la práctica ilícita del trabajo -- se desprende de forma clara que es el Negociado de Conciliación y Arbitraje al cual corresponde atender la controversia en esta etapa de los procedimientos. Por ello, se considera que el proceso administrativo ante la Junta de Relaciones del Trabajo se ha convertido en uno final y, contrario a lo resuelto por el Tribunal de Apelaciones, revisable por ese foro.

Cuando se trata de un caso claro de falta de jurisdicción de la agencia administrativa, el asunto es enteramente de la competencia judicial. En este caso, sería injusto requerir a la AAA y a la UIA que litiguen su caso ante la Junta, con el único propósito de cumplir con el requisito de finalidad.

A tenor con lo antes discutido, procedía, pues, que el Tribunal de Apelaciones expidiera el recurso solicitado por la AAA y ordenara a las partes a someterse al procedimiento de arbitraje dispuesto en el Artículo IX (A) del Convenio Colectivo.

V.

Por los fundamentos antes expuestos, revocamos la determinación del Tribunal de Apelaciones y devolvemos el caso al foro administrativo para que proceda conforme a lo aquí dispuesto.

Se dictará Sentencia de conformidad.


                                    Ángel Colón Pérez
                                     Juez Asociado

EL TRIBUNAL SUPREMO DE PUERTO RICO


Autoridad de Acueductos
y Alcantarillados

    Peticionaria

                           CC-2015-0594        *Certiorari*

     v.

Unión Independiente Auténtica
de Empleados de la Autoridad
de Acueductos y Alcantarillados

    Recurridos


SENTENCIA


En San Juan, Puerto Rico, a 6 de agosto de 2018.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la determinación del Tribunal de Apelaciones y devolvemos el caso al foro administrativo para que proceda conforme a lo aquí dispuesto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez no intervino.



Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo